**Emery Marcallan GALLIA, Appellant,**

v.

**Elson Roy SCHREIBER, Individually and as Personal Representative of the Estate of Judy Ann Schreiber and as Next Friend of Kelly Ann Schreiber and Kevin Wayne Schreiber, Minors, and the Diocese of Victoria, Appellees.**

No. 01–94–00829–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 24, 1995.

Darryl K. Carter, Houston, Phil Steven Kosub, Robinson C. Ramsey, San Antonio, for appellant.

Wayne Fisher, Sharon S. McCally, Houston, for appellees.

Before COHEN, TAFT and MIRABAL, JJ.

## OPINION

MIRABAL, Justice.

The issue in this case is whether a part-time police officer is insulated from liability for damages allegedly arising from his decision not to arrest a person for public intoxication when that person later commits a murder. Elson Roy Schreiber sued appellant Gallia, a part-time police officer for the City of Shiner, Texas, in connection with the murder of Schreiber's wife by a third party. Gallia, by motion for summary judgment, asserted the defense of official immunity, which the trial court denied. We reverse.

The summary judgment evidence shows that on the evening of September, 2, 1990, Gallia and his partner, George Pauler, were assisting with crowd control at a church dance held at the American Legion Hall in Shiner, Texas. Shortly after Gallia and Pauler arrived, they stopped to talk to Louis Schneider, a deputy constable for Lavaca County. While talking to Deputy Schneider, Kelly Schreiber approached and told them that her ex-boyfriend, Jo Jo Faltesek, and another man were going to fight. Faltesek and the other man came out of the hall and "squared off" as if they were going to fight. When the officers arrived the two men stopped acting as if they intended to fight, and no blows were ever exchanged. Gallia

noticed the smell of alcohol on Faltesek, but determined that he was not a danger to himself or others, and did not place Faltesek under arrest. Nevertheless, Gallia testified that because Faltesek had been drinking and was "wired up for a fight" he would not allow him to drive home that night. Therefore, Deputy Schneider asked Kelly Schreiber if she would drive him home. Kelly, 16 years old at the time of the incident, agreed to drive Faltesek home.

Sometime later in the evening, Faltesek and Kelly got into an argument. When Kelly's mother, Judy Ann Schreiber, attempted to intervene, Faltesek shot and killed her.

## JURISDICTION

In his sole point of error, Gallia contends the trial court erred by overruling his motion for summary judgment because the summary judgment evidence conclusively establishes his affirmative defense of official immunity. Schreiber asserts that this court lacks jurisdiction to consider Gallia's interlocutory appeal.

 Ordinarily, an appeal may be taken only from a final judgment. *City of Houston v. Kilburn*, 849 S.W.2d 810, 811 (Tex.1993). However, section 51.014 of the Civil Practice and Remedies Code provides in part:

A person may appeal from an interlocutory order of a district court, county court at law, or county court that:

(5) denies a motion for summary judgment that is based on an assertion of immunity by an individual who is an officer or employee of the state or a political subdivision of the state.

TEX.CIV.PRAC. & REM.CODE ANN. § 51.014 (Vernon 1986).

Schreiber argues that section 51.014 is not applicable because Gallia was not an "employee" of the City of Shiner. In support of this argument, Schreiber introduced summary judgment evidence to show that Gallia had resigned his job as a full-time patrolman for the City of Shiner in 1989. Gallia admits

that he resigned as a full-time, salaried patrolman, but he continued as a part-time officer and was paid an hourly wage.

We disagree with Schreiber's argument that section 51.014 is inapplicable. In *Boozier v. Hambrick*, 846 S.W.2d 593, 595–96 (Tex. App.—Houston [1st Dist.] 1993, no writ), the plaintiff argued that section 51.014 did not apply because the defendant was sued only in his individual capacity and because his actions were outside the scope of his employment. This Court held that those issues were relevant in determining whether the application of immunity was proper, but not whether the appeal could be had in the first place. *Id.*

In this case, the issue of whether Gallia is actually an employee of the City of Shiner is relevant to determining whether the affirmative defense of official immunity is applicable. However, it is not determinative of whether Gallia may prosecute this appeal. Having invoked the defense of official immunity, Gallia is entitled to have this Court review the trial court's denial of his summary judgment on that issue. However, our review of the summary judgment is limited to the issue of official immunity. *Boozier*, 846 S.W.2d at 596.

## STANDARD OF REVIEW

 Summary judgment is proper only when a movant establishes that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex.1991); *Long v. State Farm Fire & Cas. Co.*, 828 S.W.2d 125, 126–27 (Tex.App.—Houston [1st Dist.] 1992, writ denied). In reviewing the summary judgment, we must indulge every reasonable inference in favor of the nonmovant and resolve any doubts in its favor. *Wornick Co. v. Casas*, 856 S.W.2d 732, 733 (Tex.1993); *Marchal v. Webb*, 859 S.W.2d 408, 412 (Tex.App.—Houston [1st Dist.] 1993, writ denied). In reviewing the granting of a motion for summary judgment, this Court will take all evidence favorable to the nonmovant as true. *Nixon*

*v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985); *Thompson v. Vinson & Elkins,* 859 S.W.2d 617, 619 (Tex. App.—Houston [1st Dist.] 1993, writ denied). A defendant is entitled to summary judgment if it conclusively establishes all elements of an affirmative defense as a matter of law. *Roark v. Stallworth Oil & Gas, Inc.,* 813 S.W.2d 492, 495 (Tex.1991); *Marchal,* 859 S.W.2d at 412; *Clark v. Pruett,* 820 S.W.2d 903, 905 (Tex.App.—Houston [1st Dist.] 1991, no writ).

## OFFICIAL IMMUNITY

The common-law defense of official immunity protects government officers from personal liability in performing discretionary duties in good faith within the scope of their authority. *Kassen v. Hatley,* 887 S.W.2d 4, 8 (Tex.1994). The purpose of immunity is to insulate the functioning of government from the harassment of litigation, not to protect erring officials. *Id.* The public would suffer if government officers, who must exercise judgment and discretion in their jobs, were subject to civil lawsuits that second-guessed their decisions. *Id.* Official immunity increases the efficiency of employees because they need not spend time defending frivolous charges. *Id.*

Official immunity is an affirmative defense. *City of Lancaster v. Chambers,* 883 S.W.2d 650, 653 (Tex.1994). The burden is on the defendant to establish all elements of his defense. *Id.* Government employees are entitled to official immunity from suit arising from the performance of their (1) discretionary duties in (2) good faith as long as they are (3) acting within the scope of their authority. *Id.*

### 1. Was Gallia a government employee?

Schreiber contends that Gallia was not an employee of the City of Shiner on the night of September 2, 1990. In his summary judgment proof, Gallia submitted his own affidavit in which he stated:

On the evening of September 2, 1990 and the morning of September 3, 1990, I was a fully commissioned Texas Peace Officer working on a reserve schedule as a patrolman for the City of Shiner, Texas. For my work on the evening of September 2, 1990 and the morning of September 3, 1990, I was paid by the City of Shiner at the rate of $5.00 per hour. During this time, I was not privately rendering security services for the Kolar–Stanek Post No. 201 of the American Legion of Shiner, Texas (the "American Legion") or the Diocese of Victoria or any other entity or person.

In an attempt to raise a question of fact on the issue of Gallia's status with the Shiner Police Department, Schreiber introduced a letter of resignation from Gallia to the Shiner Police Chief dated October 9, 1989. In the letter, Gallia indicated that he wished to resign to take another job, but also stated that he "wish[ed] to continue my services to the City of Shiner as a fully commissioned, non-reimbursed Patrolman." At the bottom of the letter there is a hand-written notation by the police chief, "Resignation Accepted 10/9/89. Gallia will be retained in a part-time, non-paid patrolman position."

This letter does not raise a question of fact about Gallia's status with the Shiner Police Department on September 2, 1990, almost a year after the date of the letter. Furthermore, in his deposition, Gallia testified that a "part-time, non-paid patrolman" was a "fully certified peace officer who is no longer working on the full time schedule. They are working part-time stated non-paid, but we are reimbursed from the City up to 20 hours a month, and we are compensated $5.00 an hour."

Schreiber did not introduce any evidence to respond to Gallia's claim that on the night of September 2, 1990, he was paid $5.00 an hour by the city of Shiner.[1] Thus, Gallia sufficiently proved that he was a government official.

---

1. There is no dispute that on the night of the incident Gallia was wearing a Shiner patrolman
uniform, was carrying a side arm, and was driving a Shiner patrol unit.

## 2. Were Gallia's duties discretionary?

 Gallia was also required to prove that his duties on the night of September 2, 1990, were discretionary. If an action involves personal deliberation, decision and judgment, it is discretionary; actions which require obedience to orders or the performance of a duty to which the actor has no choice are ministerial. *Chambers*, 883 S.W.2d at 654. Our focus is on whether the officer is performing a discretionary function, not on whether the officer has discretion to do an allegedly wrongful act while discharging that function. *Id.* at 653.

In *Chambers*, the court held that a police officer's decision to pursue a suspect in a high speed chase is a discretionary act, even though the police officer has a duty to drive his vehicle with due regard for the safety of others. 883 S.W.2d at 654–55.

In this case, Gallia had to determine whether Faltesek had committed the offense of public intoxication, and if he had, whether he should be arrested. Gallia testified that in his opinion, Faltesek was not intoxicated to the degree that he was a danger to himself or others. Gallia concluded that although Faltesek had been drinking that night, he had not committed the offense of public intoxication.[2] Therefore, Gallia decided not to arrest Faltesek.

The decision of whether or not to arrest Faltesek involved making a judgment call, and thus was discretionary. In *Chambers*, the court recognized that the decision to arrest or merely issue a warning is discretionary. 883 S.W.2d at 655. Gallia sufficiently proved that his actions were discretionary, and Schreiber has not raised a question of fact on the issue.

## 3. Did Gallia act in good faith?

 As an element of his affirmative defense, Gallia was also required to show that he acted in good faith. The test for good faith is one of objective legal reasonableness, without regard to whether the government official involved acted with subjective good faith. *Chambers*, 883 S.W.2d at 656. To be entitled to summary judgment, an officer must prove that a reasonably prudent officer might have believed that the action taken was appropriate. *Id.* at 656–57. The officer does not need to prove that it would have been unreasonable to take a different action; nor must the officer prove that all reasonably prudent officers would have acted as he did. *Id.*

 To controvert the officer's summary judgment proof on good faith, the plaintiff must do more than show that a reasonably prudent officer could have decided to take a different action; the plaintiff must produce evidence that no reasonable person in the defendant's position could have thought that the facts were such that they justified the defendant's acts. *Id.* If officers of reasonable competence could disagree on the issue, immunity should be recognized. *Id.* at 657.

 As a part of his summary judgment evidence, Gallia submitted the deposition of Ronald H. Rogers, a former law enforcement officer and professor of criminal justice. Rogers testified that Gallia acted reasonably in determining that Faltesek was not intoxicated to the degree that he was a danger to himself or others, and that he therefore had not committed the offense of public intoxication. Rogers also opined that Gallia acted reasonably in not objecting to Faltesek leaving the American Legion hall with Kelly Schreiber. Rogers testified that a reasonable officer could have concluded that Kelly Schreiber was capable of taking Faltesek home, and could not have reasonably seen that any harm would come of this. Finally, Rogers testified that Gallia's decision not to arrest Faltesek was reasonable under the

---

2. An individual commits an offense if the individual appears in a public place under the influence of alcohol or any other substance to the degree that the individual may endanger himself or another. Act of 1985, 69th Leg., R.S., ch. 809, § 1,

1985 Tex.Gen.Laws 2859, *amended by* Act of 1993, 73rd Leg. R.S., ch. 900, § 1.01, 1993 Tex. Gen.Laws 3586, 3678, 3696 (current version at TEX.PENAL CODE ANN. § 49.02).

circumstances and was a decision based on facts that a reasonable officer in such a situation could believe.

To rebut Gallia's evidence of good faith, Schreiber introduced the testimony of Horace Loomis, a security expert. Loomis was of the opinion that Gallia was negligent for releasing Faltesek into the custody of Kelly, a minor, in violation of the statute on public intoxication. Former article 42.08 provides in part:

> (a) An individual commits an offense if the individual appears in a public place under the influence of alcohol or any other substance, to the degree that the individual may endanger himself or another.

> (b) In lieu of arresting an individual who commits an offense under Subsection (a) of this section a peace officer may release an individual if:

> (2) the individual;

> (B) is released to the care of an adult who agrees to assume responsibility for the individual.

Act of 1985, 69th Leg., R.S., ch. 809, § 1, 1985 Tex.Gen.Laws 2859, *amended by* Act of 1993, 73rd Leg., R.S., ch. 900, § 1.01, 1993 Tex.Gen.Laws 3586, 3678, 3696 (current version at TEX.PENAL CODE ANN. § 49.02).

Loomis testified that by releasing an intoxicated person to a minor female, Gallia acted with gross negligence, and in violation of the above mentioned statute.

Loomis' testimony fails to raise a question of fact. According to Gallia's evidence, he determined that Faltesek *had not committed an offense* under subsection (a) of the statute; therefore, subsection (b) never came into play. Gallia determined that although Faltasek may have been drinking, he was *not intoxicated to the degree that he was a danger to himself or others.* Schreiber had the burden to present evidence showing that no reasonable officer could have reached the same conclusion. Schreiber relies on Gallia's admission during his deposition that Faltesek was intoxicated. When questioned about Faltesek's intoxication, Gallia responded:

Q: Did you observe either one of these individuals in your opinion to have been intoxicated?

A: They had been drinking. But the limit of intoxication at that time given the circumstances cannot be readily discernible.

Q: I don't understand what you mean by that, and I'm not trying to be tricky. Can you explain to me what would make it discernible?

A: Okay. They were not in any type of a severely stumbling drunken state. They were not. They were two guys that got in an argument inside the hall. Carried it outside where we put an end to it before it ever started.

Q: And for clarification of the record, you don't mean to tell the ladies and gentlemen of the jury that before you consider someone intoxicated they have to be stumbling drunk, do you?

A: No.

Gallia also testified that he would not have let Faltasek drive home that night.

Q: Why wouldn't you do that?

A: Given the fight and that he had been drinking, he would be in no condition to drive.

Q: And this is for your benefit. You said earlier there was no fight. Would you like to clear up what you mean by fight?

A: Thank you. Being wired up for a fight. Has the adrenaline flowing. He's excited. And basically that's it.

Q: How did you determine that he had been consuming alcohol?

A: Well, when you got to him, you'd smell it on him.

Q: You smelled it on his breath?

A: About his person.

While this evidence shows that Gallia knew that Faltasek had been drinking and had concluded that under all the circumstances he should not drive, it does not compel the conclusion that Faltasek had committed the offense of "public intoxication." Unless per-

sons are under the influence of alcohol "to the degree that they pose a danger to themselves or others," subsection (a) of the public intoxication statute is not violated. Schreiber failed to meet his burden to present evidence showing that *no reasonable officer* could have concluded that Faltasek was not "publicly intoxicated" as statutorily defined. Therefore, the provisions of subsection (b) never came into play.

Further, Loomis did not testify that no reasonable police officer could have made the same decision that Gallia made. Loomis testified that Gallia was negligent, or grossly negligent in allowing Faltesek to leave with Kelly. However, negligence will not defeat a claim of official immunity. "If public officials perform their duties without negligence, they do not need immunity. The complex policy judgment reflected by the doctrine of official immunity, if it is to mean anything, protects officers from suit even if they acted negligently." *Chambers,* 883 S.W.2d at 655.

To raise a question of fact on the issue of good faith, Schreiber was required to introduce some proof to show that no reasonable police officer would have taken the actions Gallia took on the night in question. No such evidence is present in the record before this Court.

We find that Gallia sufficiently proved he acted in good faith and Schreiber failed to raise a question of fact on the issue.

### 4. Did Gallia act within the scope of his employment?

■ To establish the last element of his affirmative defense, Gallia is required to prove that he was acting within the scope of his authority. An official acts within the scope of his authority if he is discharging the duties generally assigned to him. *Chambers,* 883 S.W.2d at 658.

■ Schreiber argues that no one directed Gallia to perform crowd control at the American Legion Hall, and therefore he was acting outside the scope of his authority. However, in his affidavit, Gallia testified that he and his partner went to the hall on their own initiative, "as part of our patrol as public peace officers." Nothing in the record indicates that Gallia was required to obtain specific instructions on how best to patrol his

beat. Furthermore, the record shows that when confronted with the incident at the hall, Gallia called his supervisor who told him to find someone to take Faltesek home.

In *Chambers,* the court found that the defendant officers who were involved in a high speed chase were acting within the scope of their authority because they were "on duty, in a squad car, pursuing a suspect." 883 S.W.2d at 658. In this case, Gallia was on duty performing his patrol. He was in a squad car, in uniform, and was attempting to defuse a hostile situation between two men before any blows were exchanged. Gallia sufficiently proved that he was acting within the scope of his authority. Schreiber has failed to raise a question of fact on the issue.

Because Gallia sufficiently proved all elements of his affirmative defense of official immunity, and Schreiber failed to raise a question of fact on any element, the trial court erred by denying Gallia's motion for summary judgment. We sustain Gallia's sole point of error.

We reverse the judgment of the trial court and render judgment that Schreiber take nothing from Gallia.