**CITY OF BEVERLY HILLS, Appellant,**

v.

**David GUEVARA, Appellee.**

No. 10–94–203–CV.

Court of Appeals of Texas, Waco.

Dec. 13, 1995.

David G. Tekell, Naman, Howell, Smith & Lee, P.C., Waco, for appellant.

Darren Obenoskey, Andrews & Associates, Waco, for appellee.

Before THOMAS, C.J., and CUMMINGS and VANCE, JJ.

## OPINION ON REMAND

VANCE, Justice.

David Guevara filed suit under the Texas Tort Claims Act against the City of Beverly Hills ("City") alleging that Michael York, a city police officer, negligently injured him while handcuffing him. *See* TEX.CIV.PRAC. & REM.CODE ANN. §§ 101.001–101.109 (Vernon 1986 & Supp.1995). Guevara did not sue York individually.

The City filed a motion for summary judgment asserting, among other theories, that York's qualified immunity as a police officer inured to the City's benefit. The trial court denied the motion.

On original submission, we dismissed the interlocutory appeal for lack of jurisdiction; the Supreme Court reversed our judgment and remanded the cause to us. *City of Beverly Hills v. Guevara*, 886 S.W.2d 833, 838 (Tex.App.—Waco 1994), *rev'd*, 904 S.W.2d 655, 656 (Tex.1995); TEX.CIV.PRAC. & REM. CODE ANN. § 51.014(5) (Vernon Supp.1995).

We now consider the merits of the City's claims.

In its sole point, the City asserts that the court erred in failing to grant its Amended Motion for Summary Judgment. That motion alleges three grounds for summary judgment: (1) the "intentional tort" exception to the waiver of sovereign immunity, (2) the absence of a "causal nexus" between Guevara's claimed injuries and the use of tangible personal property, and (3) the official "good faith" immunity of the police officer involved. We reach only the "official immunity" theory because jurisdiction in interlocutory appeals from the denial of a summary judgment in this context is granted only for claims based on an assertion of official immunity. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 51.014(5); *Boozier v. Hambrick*, 846 S.W.2d 593, 596 (Tex.App.—Houston [1st Dist.] 1993, no writ).

## JURISDICTION

Ordinarily, the denial of a motion for summary judgment cannot be appealed. *Novak v. Stevens*, 596 S.W.2d 848, 849 (Tex. 1980). However, section 51.014(5) of the Civil Practice and Remedies Code provides for an interlocutory appeal of the denial of a summary judgment "that is based on an assertion of immunity by an individual who is an officer or employee of the state or a political subdivision of the state." TEX.CIV. PRAC. & REM.CODE ANN. § 51.014(5). Because the City's motion for summary judgment was "based on" official immunity, we have jurisdiction. *Guevara*, 904 S.W.2d at 656.

## CAUSE OF ACTION

Guevara's pleadings allege that Officer York was attempting to arrest him on October 25, 1992. While York was in the process of handcuffing him, bystanders began to gather around asking questions. Guevara alleges that York "overreacted" to the presence of the bystanders and attempted to "expedite the handcuffing." In doing so, York "failed to act reasonably and prudently" and disregarded Guevara's pleas of pain.

The City's motion for summary judgment argues, in part, that Guevara's pleadings allege an intentional tort.[1] Guevara responds

---

1. The City argues that it is immune from liability for the intentional torts of its employees. TEX.CIV. PRAC. & REM.CODE ANN. § 101.057(2) (Vernon 1986).

that he is not asserting an intentional tort, rather that he was injured "as a result of the negligent conduct of a City of Beverly Hill's employee while that employee was attempting to handcuff [him]." He further responds that York "may not have needed to use any more than normal force" to place him in an injurious position and that "while the precise acts necessary to effect the arrest may be within the discretion of the officer, there are certain actions which are nevertheless unreasonable and indicative of negligence on behalf of the actor."

## WAIVER OF SOVEREIGN IMMUNITY

Generally, governmental units enjoy immunity from tort liability unless that immunity has been waived by the provisions of the Texas Tort Claims Act (TTCA). *See* TEX. CIV.PRAC. & REM.CODE ANN. §§ 101.001–101.109. Section 101.021 expressly waives sovereign immunity in certain instances. A governmental unit is liable for "personal injury and death so caused by a condition or use of tangible property or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." *Id.* § 101.021(2). Guevara's action is brought under section 101.021(2).

■■■ A governmental entity does not have respondeat-superior liability under section 101.021(2) for the negligence of its employee if the employee possesses official immunity. *DeWitt v. Harris County,* 904 S.W.2d 650, 651 (Tex.1995). Sovereign immunity and official immunity are distinguishable. *Id.* at 653. Official immunity protects individual officials from liability; sovereign immunity protects governmental entities from liability. *Id.* The City is not, however, liable under section 101.021(2) for the negligence of its employee if the employee has no liability because of official immunity. *Id.* at 654.

## OFFICIAL IMMUNITY

■■■ Official immunity in Texas is an affirmative defense. *City of Lancaster v. Chambers,* 883 S.W.2d 650, 653 (Tex.1994). Governmental employees are entitled to official immunity from suits arising from the performance of their (1) discretionary duties in (2) good faith as long as they are (3) acting within the scope of their authority. *Id.;*

*K.D.F. v. Rex,* 878 S.W.2d 589, 597 (Tex. 1994) (orig. proceeding). The City and Guevara agree that Officer York was acting within his discretion and within the scope of his official capacity. They differ on whether the summary-judgment evidence establishes that York was acting in good faith.

Our Supreme Court has adopted the federal standard of "objective reasonableness" in determining good faith in "hot pursuit" cases:

> We hold that an officer acts in good faith in a pursuit case if: a reasonably prudent officer, under the same or similar circumstances, could have believed that the need to immediately apprehend the suspect outweighed a clear risk of harm to the public in continuing the pursuit.

*Chambers,* 883 S.W.2d at 656. The Court's definition of good faith is "derived substantially" from the federal qualified immunity law in "section 1983 claims":

> Although the cases sometimes refer to the doctrine of qualified "good faith" immunity, the test is one of objective legal reasonableness, without regard to whether the government official involved acted with subjective good faith. "[W]e look to whether a reasonable official could have believed his or her conduct to be lawful in light of clearly established law and the information possessed by the official at the time the conduct occurred." Thus, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law."

*Id.* (citations omitted).

■■■ Thus, in hot-pursuit cases, the person or entity claiming qualified immunity must prove that a reasonably prudent officer might have believed that the pursuit should have been continued. *Id.* at 656–57. The officer does not have to prove that it would have been unreasonable to stop the pursuit; nor must the officer prove that all reasonably prudent officers would have continued the search. *Id.* at 657. The nonmovant faces an "elevated standard of proof" in seeking to defeat a claim of official immunity. *Id.* at 656. To controvert the officer's summary-judgment proof of good faith, the plaintiff must do more than show that a reasonably prudent officer could have decided to stop

the pursuit; the plaintiff must show that "no reasonable person in the defendant's position could have thought the facts were such that they justified [the officer's] acts." *Id.* at 657.

The courts of appeals have adapted the *Chambers* test for objective good faith to cases which do not involve pursuit. *Rhodes v. Torres,* 901 S.W.2d 794, 798 (Tex.App.—Houston [14th Dist.] 1995, no writ) (probation officer could have believed causing arrest of probationer was lawful in light of clearly established law and the information he possessed); *City of Hempstead v. Kmiec,* 902 S.W.2d 118, 121 (Tex.App.—Houston [1st Dist.] 1995, no writ) (plaintiff failed to prove that "no reasonable person in the defendant's position could have though the facts were such that they justified defendant's acts" in context of allegations of false arrest); *Gallia v. Schreiber,* 907 S.W.2d 864, 869 (Tex.App.—Houston [1st Dist.] 1995, no writ) ("If officers of reasonable competence could disagree on the issue, immunity should be recognized.") (plaintiff complained of officer's negligent failure to arrest an intoxicated person who later murdered plaintiff's wife); *Victory v. Bills,* 897 S.W.2d 506, 509 (Tex.App.—El Paso 1995, no writ) (deputy sheriff must prove reasonably prudent officer might have believed force was necessary in assault and battery action).

Thus, the question before us is not whether York was negligent. He could be negligent yet officially immune from liability. The question before us is whether the summary-judgment proof established as a matter of law that York was acting in good faith. Stated another way: Did the City prove that a reasonably prudent officer could have believed his actions were appropriate in light of clearly established law and the information possessed by the officer at the time the conduct occurred? If so, did Guevara controvert that proof by showing that no reasonable person in York's position could have thought the facts were such that they justified York's acts?

## SUMMARY JUDGMENT

The standards for reviewing a summary judgment are well established. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548 (Tex.1985). The movant has the burden of showing that no genuine issue of material fact exists and that it is entitled to the summary judgment as a matter of law. *Id.* The reviewing court must accept all evidence favorable to the nonmovant as true. *Id.* at 549. Every reasonable inference must be indulged in favor of the nonmovant and all doubts resolved in its favor. *Id.*

■ The City's summary-judgment proof included the affidavit of Officer York. York stated that he observed a vehicle without a current motor vehicle inspection sticker. He activated his emergency lights, but the vehicle continued until it parked in the parking lot of an H.E.B. grocery store. York informed the driver, Guevara, that he had been stopped for an expired safety inspection sticker. He asked Guevara for his drivers' license and proof of liability insurance. York spoke to Guevara in English, and Guevara responded in English. Guevara told York that he did not have insurance.

York wrote citations for the expired inspection sticker and for failing to maintain proof of financial responsibility. He approached Guevara's car and asked him to sign the citations to indicate his "promise to appear" in court within ten days. According to York, Guevara refused to sign the citations and began to argue with York about his legal authority to issue citations in the H.E.B. parking lot. After Guevara's third refusal to sign the citations, York instructed him to put his hands on the car, back his feet up, and spread his legs. York patted down Guevara for weapons and told him he was being arrested on the two offenses because he refused to execute the promise to appear. Guevara "tensed his arms up" and resisted York's attempts to handcuff him.

At this point, Bianca Ochoa, a bystander, began speaking with Guevara in Spanish. She told York that Guevara could not understand English and was confused about why he was being arrested. According to York, other bystanders began to gather around:

I was concerned the situation might develop into a situation where my own safety and the safety of others would be threatened.... I again placed my hand on Mr. Guevara's hand to pull it behind his back. Mr. Guevara continued to keep his arms stiff and he resisted my movement of his

hand rearwards. I then took my other hand behind his shoulders to push him forward. I exerted just enough pressure to cause Mr. Guevara to lean forward and so that I could get his hand behind his back for handcuffing. He finally leaned forward and I was able to bring his other hand around and handcuff him. I did not pull his hands or arms unnaturally behind his back but just far enough to get both handcuffs on his wrists. I did not intend to injure Mr. Guevara and I did not use any more force than I thought was necessary in order to quickly effect the arrest of a man who was resisting my instructions and movements of his hands....

Although I did not intend to hurt Mr. Guevara, I did intend to use the physical force against certain parts of his body which I felt was reasonably necessary to overcome his resistance and result in his submission to my arrest of him. I did not know he had a previous back injury. He did not appear to be injured in any way either before or after I put the handcuffs on him.

The actions to be taken by a police officer in arresting a person require the exercise of judgment. There is no single action or method to arrest someone that is prescribed by law. The officer or officers involved must use their own discretion and decide what is reasonably required to make the arrest under the particular circumstances of each given situation. To my knowledge, there is no one precise or certain method prescribed for handcuffing an arrestee. Likewise, there is no legal requirement which prescribes any one manner of reacting to an arrestee's statements regarding pain.

Guevara's response to the motion included the affidavit of Tom Frost, Chief of Police with the City of Lorena. Frost's affidavit states that the two offenses for which Guevara was arrested are non-violent misdemeanors. In his opinion, from a review of deposition testimony, Guevara was not resisting arrest or presenting a threat to York or to the general public. Frost further stated:

While elevating or leveraging the arrestee's arm behind his back helps secure his compliance, the technique also presents a significant risk of injury to the shoulder.

Pushing down on the individual's back puts more of a stress on the shoulder. A prudent officer would not use the procedure unless the arrest needed to be effected immediately because of the security risk posed by the arrestee.

A reasonably prudent police officer, under the same or similar circumstances as [O]fficer York, would know that there was no need to immediately apprehend Mr. Guevara. Accordingly, the clear risk of harm of using the arrest technique described by Ms. Ochoa substantially outweighed the need to immediately apprehend Mr. Guevara.

Guevara's summary-judgment response also included excerpts from his deposition and that of Bianca Ochoa. Their affidavits question whether Guevara was resisting arrest and whether the situation was such that York should have feared for his safety or the safety of the public.

We believe that York's affidavit established that a reasonably prudent officer might have believed his actions were appropriate. *Chambers*, 883 S.W.2d at 656–57. We must next look at Guevara's controverting evidence in light of the "elevated standard of proof for the nonmovant seeking to defeat a claim of official immunity in response to a motion for summary judgment." *Id.* at 656. To controvert the City's summary-judgment proof of good faith, Guevara must do more than show that a reasonably prudent officer could have decided to take a different action; he must produce evidence that no reasonable person in York's position could have thought that the facts were such that they justified York's acts. *Id.* at 657; *Gallia*, 907 S.W.2d at 869. "If officers of reasonable competence could disagree on the issue, immunity should be recognized." *Gallia*, 907 S.W.2d at 869.

Frost's affidavit states that a reasonably prudent officer would have known that there was no need to immediately apprehend Guevara and that an officer would not use the handcuffing procedure unless the arrestee posed a security risk. Frost's affidavit does not state that "no reasonable person in [York's] position *could have thought* the facts were such that they justified [York's] acts."

*Chambers,* 883 S.W.2d at 657 (emphasis added). Guevara's action against the City is not for the arrest; rather, he complains of York's handcuffing technique. Frost's affidavit states that an officer would not use the handcuffing procedure "unless the arrestee posed a security risk." Although Frost's affidavit states that Guevara was not a threat to York or the general public, it does not state that no reasonable person *could have believed* that Guevara posed a security risk. Given the "elevated standard of proof" necessary to controvert the City's showing of good faith, we believe Guevara's evidence fails. *Id.* at 656.

We hold that the court erred in denying the City's motion for summary judgment. We sustain the point and reverse and render summary judgment for the City that Guevara take nothing by his suit.