William **WADEWITZ, et al., Appellants,**

v.

Dallas **MONTGOMERY, et al., Appellees.**

No. 10–95–049–CV.

Court of Appeals of Texas, Waco.

Jan. 10, 1996.

Rehearing Overruled Feb. 14, 1996.

Keith C. Cameron, Steve L. Moody, Naman, Howell, Smith & Lee, P.C., Waco, for appellants.

Jack F. Holmes, Belton, for appellees.

Before THOMAS, C.J., and CUMMINGS and VANCE, JJ.

## OPINION

CUMMINGS, Justice.

This is an interlocutory appeal from the trial court's denial of a motion for summary judgment. On June 1, 1993, a patrol car driven by Officer William Wadewitz of the Waco Police Department collided with an automobile containing the appellees, Dallas and Michelle Montgomery. Appellees sustained injuries and, consequently, sued Officer Wadewitz and the City of Waco, the appellants, in a personal injury suit. Appellants moved for summary judgment on two grounds; first, that they conclusively proved in their summary judgment evidence that Officer Wadewitz was entitled to the affirmative defense of official immunity, and second, that Officer Wadewitz's official immunity shielded the city from liability, as provided in the Texas Tort Claims Act.[1] Through two points of error Appellants argue that the trial court erred in denying their summary judgment motion with regard to both Officer Wadewitz and the City. We affirm.

The summary judgment evidence establishes that on June 1, 1993, Officer Wadewitz was investigating the scene of a burglary that had occurred the previous day at a business located on the corner of Valley Mills Drive and Greer Drive in Waco. While in the process of conducting his investigation, he was dispatched to assist another police officer, who was responding to a report of a theft in progress in the 1400 block of Columbus Avenue, also in Waco.

Officer Wadewitz first decided that, due to the nature of the dispatch call, he would proceed on an emergency basis. Then, before moving his patrol car, he determined on his own the route he would take to the reported crime scene: he would drive southbound on Greer Drive; turn left onto seven-lane Valley Mills Drive; proceed eastward on Valley Mills until he reached Waco Drive;

1. The applicable portion of the Texas Tort Claims Act provides as follows:

A governmental unit in the state is liable for: (1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:

(A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and

(B) *the employee would be personally liable to the claimant under Texas law* [.]

TEX.CIV.PRAC. & REM.CODE ANN. § 101.021 (Vernon 1986) (emphasis added).

turn left onto Waco Drive; continue north-bound on Waco Drive, which runs parallel to Columbus Avenue, until he approached the 1400 block of Waco Drive; and then turn right on a yet-undetermined side street, which would take him to Columbus Avenue. Officer Wadewitz, after activating his emergency lights, siren, and air horn, arrived successfully at the intersection of Greer and Valley Mills. He surveyed the road for on-coming traffic. Valley Mills Drive has three lanes of traffic going in each direction with a left-turn lane in the middle. The only vehicle Officer Wadewitz noticed in the three west-bound lanes was a truck in the middle of the three lanes. He then proceeded to cross the three west-bound lanes. After passing in front of the truck, Appellee's vehicle, which had been travelling in the innermost of the three west-bound lanes and behind the truck, collided with Officer Wadewitz's patrol car.

Appellants filed their motion for summary judgment on the grounds of official and sovereign immunity. The motion was denied, and Appellants timely brought this interlocutory appeal. TEX.CIV.PRAC. & REM.CODE ANN. § 51.014(5) (Vernon Supp.1996) (authorizing interlocutory appeal of a denial of a motion for summary judgment based on an assertion of official immunity by an individual).

■ A reviewing court applies the same standard to the denial of a summary judgment as to the granting of one. *City of Galveston v. Whitman*, No. 14–94–291–CV, slip op. at 3 —— S.W.2d ——, —— [1995 WL 472322] (Tex.App.—Houston [14th Dist.], August 10, 1995, n.w.h.) (citing *City of Houston v. Kilburn*, 849 S.W.2d 810 (Tex.1993)). To prevail on a motion for summary judgment, the movant has the burden of showing that there is no issue of material fact and that he is entitled to judgment as a matter of law. *Id.* In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true and every reasonable inference resolved in the non-movant's favor. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). When a defendant moves for summary judgment on an affirmative defense, we review the granting or denial of summary judgment to determine whether the summary judgment proof establishes as a matter of law that there is no genuine issue of material fact as to whether the defendant has established all the elements of his affirmative defense. *Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex.1970).

■ Official immunity is an affirmative defense, and as such, the burden is on the defendant to establish all of its elements. *Montgomery v. Kennedy*, 669 S.W.2d 309, 310–11 (Tex.1984); *Perry v. Texas A & I Univ.*, 737 S.W.2d 106, 110 (Tex.App.—Corpus Christi 1987, writ ref'd n.r.e.). Government employees are entitled to official immunity from suits arising from the performance of their (1) discretionary duties while acting in (2) good faith as long as they are (3) within the scope of their authority. *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex. 1994); *Wyse v. Department of Pub. Safety*, 733 S.W.2d 224, 227 (Tex.App.—Waco 1986, writ ref'd n.r.e.); *Baker v. Story*, 621 S.W.2d 639, 644 (Tex.Civ.App.—San Antonio 1981, writ ref'd n.r.e.).

Elements one and three are not in dispute; Appellees concede that Officer Wadewitz was performing a discretionary act and that he was acting within the scope of his employment. The only question is whether he was acting in good faith.

■ How do we know whether Officer Wadewitz acted in good faith? In *City of Lancaster v. Chambers* the Supreme Court enunciated a test to ascertain good faith when an officer makes a decision either to continue or discontinue his pursuit of a criminal suspect who is attempting to evade arrest. The test provides:

> An officer acts in good faith in a pursuit case if a reasonably prudent officer, under the same or similar circumstances, could have believed that the need to immediately apprehend the suspect outweighed a clear risk of harm to the public in continuing the pursuit.

*Id.* at 656. While this rule of law does not directly fit the facts at hand, we find it to be instructive. *See City of Beverly Hills v. Guevara*, 911 S.W.2d 901, 902–03 (Tex. App.—Waco, 1995, n.w.h.) (applying test to

police officer who had allegedly injured someone while handcuffing him); *Murillo v. Garza*, 881 S.W.2d 199, 202 (Tex.App.—San Antonio 1994, no writ) (applying test to city traffic engineer who had decided not to install a traffic signal at an intersection where an accident later occurred); *City of Dallas v. Half Price Books, Records, Magazines, Inc.*, 883 S.W.2d 374, 377 (Tex.App.—Dallas 1994, no writ) (applying test to officer firing at fleeing suspect).

■ The purpose behind the test in *Chambers* is to preserve the official immunity of the police officer as long as he is performing his designated duties and any reasonably prudent officer could have believed that the need of the officer to perform the duties in question, whatever they might be, outweighed the undeniable but unavoidable danger to the public at the time. *See Chambers*, 883 S.W.2d at 656. This rationale fits the facts here. Accordingly, Officer Wadewitz may be said, as a matter of law, to have acted in good faith if a reasonably prudent officer, under the same or similar circumstances, could have believed that the need to immediately respond to his call outweighed the clear risk of harm to the public when he drove across the west-bound lanes of Valley Mills Drive despite not having a clear view of the traffic.[2] To have controverted Appellants' summary judgment proof on good faith, Appellees must have shown more than that a reasonably prudent officer could have decided not to drive into the street; they must have shown that no reasonably prudent officer in Officer Wadewitz's position could have thought the facts were such that they justified his actions. *Id.* at 657.

■ Appellants contend that Officer Wadewitz's decision to enter Valley Mills Drive when he did not have a clear view of the oncoming traffic should not be part of our consideration as to whether he acted in bad faith in responding to the dispatch call on June 1. They assert that such an inquiry would involve questioning whether Officer Wadewitz had acted negligently and that negligence is not a factor in undertaking a *Chambers* analysis.

■ Insofar as *Chambers* does not compel us to find a police officer guilty of bad faith when he acts negligently, Appellants are correct. However, the conclusion does not follow that negligence has no place in the *Chambers* formula. *Chambers* directs us to look at what a "reasonably prudent officer" would do under the same or similar circumstances in determining whether he acted in bad faith; if no reasonably prudent officer would have chosen the same course of action, then the officer will be found to have acted in bad faith. *Id.* The use of a "reasonableness" standard in conducting the analysis necessarily implicates a consideration of negligence. Whenever someone fails to act reasonably in anything he does, he may be said to have acted negligently. Under *Chambers*, however, a police officer does not waive his official immunity merely because he acts negligently. *Id.* at 656–57.

■ The *Chambers* test allows a police officer wide latitude in deciding how to perform his discretionary duties and tolerates a great amount of negligence in the manner in which he performs them before he will be found to have acted in bad faith. *Id.* One can envision the amount of negligence tolerated on something like a sliding scale, with reasonableness on the left side of the scale; with reasonableness eventually blending into negligence somewhere in the middle; and then, continuing to move to the right, with the presence of reasonableness in the negligence range completely disappearing, leaving an area at the extreme right end of the scale that could be called "Complete Absence of Reasonableness." Only when the officer's actions fall into this range on the extreme right end of the scale will the officer be found to have acted in bad faith. *Id.* at 656; *see id.* at 657 n. 7 ("[The *Chambers* ]

---

2. Appellants argue that Officer Wadewitz must be found to have acted in good faith because a reasonably prudent officer could have chosen the same route he did to the crime scene on Columbus Avenue and that a reasonably prudent officer could have chosen to proceed on an emergency basis. Appellees do not quarrel with the route Officer Wadewitz chose or his decision to proceed on an emergency basis; their concern has always been with the manner in which he operated his patrol car in following the route on an emergency basis.

standard is analogous to the abuse of discretion standard of review utilized by an appellate court when reviewing certain trial court rulings; an abuse of discretion is shown only if the trial court could not have reasonably reached the decision in question.") In other words, the officer could have been negligent in undertaking the disputed activity, even according to a reasonably prudent officer, but as long as some reasonably prudent officer "could have believed" that the officer's actions were justified under the circumstances, then the officer will not be found to have acted in bad faith. *Id.* at 656–57; *see id.* at 657 (if officers of reasonable competence could disagree on the issue, immunity should be recognized (citing *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986)). The officer may only be found to have acted in bad faith if there is absolutely no reasonable basis for his decision. *Id.* at 657. Therefore, Appellants' argument that negligence has no place in the *Chambers* analysis is misdirected.[3] Negligence is necessarily implicated in the test, although it, alone, does not answer whether the officer in question acted in bad faith.[4]

■ Appellants also contend that the only relevant question on the issue of bad faith is whether Officer Wadewitz properly exercised his discretion in initially deciding to respond to the dispatch call, to proceed on an emergency basis, and to follow the route he picked in his mind. They assert that, so long as a reasonably prudent officer could have made this decision, Officer Wadewitz was then free to act as recklessly as he wanted to in driving to the reported crime scene on Columbus Avenue. This contention obviously cannot be true.

■ An officer's decision to undertake a chase at a high rate of speed does not automatically mean that he will be acting in good faith throughout the duration of the chase until its completion. For instance, if an officer properly decides at the initiation of a chase that he could reasonably follow a suspect at a high rate of speed, the officer most assuredly will not be found to have acted properly if he then, several miles down the road, decides to drive 85 miles per hour in front of an elementary school as the students are leaving classes at the end of the day. Different circumstances arising throughout the officer's high-speed pursuit of a suspect will force him to constantly re-evaluate his decision to continue the chase. *See Chambers,* 883 S.W.2d at 655 ("Beyond the initial decision to engage in the chase, a high speed pursuit involves the officer's discretion on a number of different levels, including, which route should be followed, at what speed, should back-up be called for, and how closely should the fleeing vehicle be pursued.").

Officer Wadewitz's initial decision to proceed to Columbus Avenue on an emergency basis and follow the route he chose did not mean that he would automatically be found to have acted in good faith throughout his journey. He was required to evaluate the conditions of his journey as they arose. One of

**3.** Appellees contend that article 6701d, section 24(e), of the Revised Civil Statutes, which obligates drivers of emergency vehicles to drive with due regard for the safety of all persons on the road, necessarily makes negligence an element of the *Chambers* analysis. Act of April 27, 1971, 62nd Leg., R.S., ch. 83, 1971 Tex.Gen.Laws 722, 727–28 (current version at Tex.Transp.Code Ann. § 546.005 (Vernon Pamph.1996)); *see City of Lancaster v. Chambers,* 883 S.W.2d 650, 656 n. 5 (Tex.1994). The *Chambers* court, however, expressly ruled that article 6701d, section 24(e), while addressing the issue of whether the driver of an emergency vehicle has acted negligently or grossly negligently, says nothing about the applicability of the official immunity doctrine to the driver. *Chambers,* 883 S.W.2d at 656 n. 5. Therefore, any reliance upon article 6701d, section 24(e), in relation to the *Chambers* test, which is a test solely for the purpose of determining whether official immunity has been waived by a police officer, is inapposite. *Id.*

**4.** Appellants cite to this court's decision in *Carpenter v. Barner,* 797 S.W.2d 99 (Tex.App.—Waco 1990, writ denied), for the proposition that the official immunity doctrine protects all the negligent acts of a police officer. This reliance is misplaced. While *Carpenter* acknowledges that an officer may perform his duties negligently without fear of waiving his official immunity defense, it does not grant an officer license to perform his duties without any basis in reason. *Id.* at 101–02. Moreover, *Carpenter* was addressing the issue of whether the officer in its case was performing a discretionary act, not whether he had performed the act in bad faith. *Id.* at 101.

these conditions was the state of the traffic on Valley Mills Drive before he decided to cross its west-bound lanes from Greer Drive. Appellants' argument that Officer Wadewitz must have acted in good faith at the time of the collision simply because he acted properly when he first began his journey is without merit.

 In their response to Appellants' motion for summary judgment, Appellees submitted to the trial court an affidavit from Dan Ramsey, a former police officer in the Temple Police Department who had investigated between 4000 to 5000 automobile accidents, who had received over 290 hours of specialized training in the area of accident reconstruction, who was certified in Collision Reconstruction by the Texas Department of Public Safety, and who had been certified as a Specialized Performance Driving Instructor of police vehicles by Texas A & M University. Ramsey stated that, after reviewing the scene of the accident, the damage to the vehicles, and the depositions of Officer Wadewitz and Dallas Montgomery, it was his opinion that no reasonably prudent police officer would have entered the innermost west-bound lane of Valley Mills Drive the way Officer Wadewitz did on June 1, 1993. Appellants offered no summary judgment evidence that Officer Wadewitz had acted reasonably when he crossed, without a clear view of the traffic, the three west-bound lanes of Valley Mills Drive on June 1. Appellees' affidavit from Ramsey was more than sufficient to controvert Appellants' assertion in their motion for summary judgment that Officer Wadewitz acted in good faith at the time of the accident. *See Chambers*, 883 S.W.2d at 657. Accordingly, the trial court did not err in denying Appellants' motion.

We need not consider Appellant's second point of error concerning the City's claim of sovereign immunity because we have declined to find as a matter of law that Officer Wadewitz was entitled to protection under the official immunity doctrine. TEX.CIV.PRAC.

& REM.CODE ANN. § 101.021 (Vernon 1986); *City of Beverly Hills*, 911 S.W.2d at 902; *see Half-Price Books*, 883 S.W.2d at 376; *Carpenter v. Barner*, 797 S.W.2d 99, 101 (Tex. App.—Waco 1990, writ denied). Appellants' two points of error are overruled. The judgment is affirmed.

VANCE, Justice, dissenting.

This appeal presents the question: What level of conduct by an officer will be examined to determine if the officer is entitled to official immunity because he acted in good faith?

The majority focuses on Officer Wadewitz's conduct at the intersection of Valley Mills Drive and Greer Drive, rather than his overall course of action, to find a fact issue about good faith. It relies on the assertion of an expert that "no reasonably prudent police officer, under the same or similar circumstances could have believed that entering the inside lane when he could not see any possible traffic, outweighed the clear risk of harm to the public in entering that lane when he did."[1] I believe that this inquiry is too narrow and, thus, violates the principles of *City of Lancaster v. Chambers* and frustrates the function of official immunity. *City of Lancaster v. Chambers*, 883 S.W.2d 650 (Tex. 1994).

Perhaps the "reasonably prudent officer" formulation of the *Chambers* good-faith test should be recharacterized.[2] *Id.* at 656. It can appear to "necessarily implicate a consideration of negligence," as the majority states while recognizing that official immunity is not waived just because one acts negligently. Perhaps the majority is saying that negligence does not conclusively establish bad faith but is evidence of bad faith. If so, I disagree, believing that the two are entirely different concepts. "Despite similarity between this [good faith] standard and a general negligence test, no equivalence should be implied." *Id.* at 656 n. 5.

Official immunity is a policy doctrine that relieves government employees of liability for

---

1. At a deposition the expert said that his criticism of Officer Wadewitz was that he was negligent in entering the third lane of Valley Mills Drive when he did.

2. Good faith is a question of state of mind; the inquiry asks what a hypothetical officer could have *believed*. Negligence, on the other hand, focuses on conduct compared to the hypothetical "reasonable-man" standard.

their negligence in some instances. Those injured during the performance of discretionary duties by a police officer will almost always be able to point to some specific action that the officer took or failed to take. If we focus on whether the specific act, rather than the overall course of conduct, is the basis on which the officer's good faith must be tested, official immunity will cease to be a meaningful public policy. The mere fact that something bad happened as a result of an officer's conduct will be proof that the officer lacked good faith and is not entitled to official immunity.[3]

Examining the question of whether Officer Wadewitz acted in good faith when he determined to proceed on an emergency basis and then determined the route he would take in responding to the call that he had received, *i.e.* his overall course of conduct, I agree with Appellants that the summary judgment evidence conclusively establishes that he did. As the majority notes, even the Appellees do not quarrel with those decisions by Officer Wadewitz.

I would sustain the Appellants' points of error, vacate the trial court's order denying the motion for summary judgment, and enter a summary judgment for Appellants on grounds of official immunity.[4]

**3.** Qualified immunity acts to protect "all but the plainly incompetent or those who knowingly violate the law." *City of Lancaster v. Chambers*, 883 S.W.2d 650, 656 (Tex.1994).

**4.** Both the City of Waco and Officer Wadewitz are entitled to the benefit of the official immunity. *DeWitt v. Harris County*, 904 S.W.2d 650, 654 (Tex.1995).