119 F.Supp.2d 639 (2000)
Alex M. CASANOVA, Plaintiff,
v.
CITY OF BROOKSHIRE, Waller County, Harris County, Deputy L. Barr, Chief J. Garcia and Officer J. Prejean, Defendants.
No. Civ.A. H-99-3950.
United States District Court, S.D. Texas.
September 7, 2000.
*640 *641 *642 *643 *644 *645 Luis Roberto Vera, Jr., San Antonio, TX, for Plaintiff.
William Scott Helfand, Magenheim Bateman et al., Houston, TX, Vanessa Ann Gonzalez, Allison Bass et al., Austin, TX, F. Clinton Gambill, II, Office of Harris County Atty., Houston, TX, for Defendants.

MEMORANDUM AND ORDER
CRONE, United States Magistrate Judge.
Pending before the court are Defendant Chief J. Garcia's ("Garcia") Motion to Dismiss (# 33), Defendant Waller County's ("Waller") Motion to Dismiss Plaintiff's Amended Complaint (# 36), and Garcia's Motion for Summary Judgment (# 44). Garcia and Waller seek the dismissal of Plaintiff Alex M. Casanova's ("Casanova") claims brought under 42 U.S.C. § 1983 and Texas common law. Having reviewed the pending motions, the submissions of the parties, the pleadings, and the applicable law, the court is of the opinion that dismissal and/or summary judgment is warranted.

I. Background

Casanova, a resident of Bexar County, Texas, filed this action on November 15, 1999. According to his amended complaint, Casanova's claims arise from his wrongful arrest on or about September 3, 1997, for the delivery of a controlled substance. Casanova offers few facts describing the incident that forms the basis of his complaint, stating:
On or about September 3, 1997, the Plaintiff, Alex M. Casanova was arrested in Bexar County, Texas pursuant to a warrant issued by the County of Waller. The arrest arose out of information from an unidentified informant that a controlled *646 substance had been purchased from someone named "Alex."
The plaintiff had never been in Waller County prior to his first court appearance there.
The charges against the Plaintiff for the delivery of a controlled substance were dismissed on or about September 9, 1998 as the only eyewitness to the crime could not identify the Plaintiff.
From these facts, Casanova alleges claims against the City of Brookshire ("Brookshire"), Waller, Harris County ("Harris"), Deputy L. Barr ("Barr"), Garcia, and Officer J. Prejean ("Prejean") for violations of 42 U.S.C. § 1983 and Texas common law, including claims for assault, false arrest, and malicious prosecution. Garcia and Waller filed motions to dismiss Casanova's complaint for failure to state a claim upon which relief can be granted. Garcia also filed a motion for summary judgment to which Casanova submitted no response.

II. Analysis

A. Applicable Standards

1. Dismissal Under Rule 12(b)(6)

A motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests only the formal sufficiency of the statement of a claim for relief. It is not a procedure for resolving contests about the facts or the merits of a case. In ruling on such a motion, the court must accept the factual allegations of the complaint as true, view them in a light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor. See Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); Beanal v. Freeport-McMoran, Inc., 197 F.3d 161, 164 (5th Cir.1999); Brown v. Nationsbank Corp., 188 F.3d 579, 585 (5th Cir.1999), cert. denied, ___ U.S. ___, 120 S.Ct. 2740, 147 L.Ed.2d 1004 (2000); Indest v. Freeman Decorating, Inc., 164 F.3d 258, 261 (5th Cir.1999); Jefferson v. Lead Indus. Ass'n, Inc., 106 F.3d 1245, 1250 (5th Cir.1997); Baker v. Putnal, 75 F.3d 190, 196 (5th Cir.1996); Fernandez-Montes v. Allied Pilots Ass'n, 987 F.2d 278, 284-85 (5th Cir.1993). Generally, the court may not look beyond the four corners of the plaintiff's pleadings. See Indest, 164 F.3d at 261; Baker, 75 F.3d at 196; McCartney v. First City Bank, 970 F.2d 45, 47 (5th Cir.1992). The court may, however, consider matters that are outside of the pleadings if those materials are matters of public record. See Davis v. Bayless, 70 F.3d 367, 372 n. 3 (5th Cir.1995); Cinel v. Connick, 15 F.3d 1338, 1343 n. 6 (5th Cir.), cert. denied, 513 U.S. 868, 115 S.Ct. 189, 130 L.Ed.2d 122 (1994); see also 5A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2d § 1357, at 299 (1990). The motion must be denied unless it appears to a certainty that the plaintiff can prove no set of facts that would entitle him to relief. See Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); Jefferson, 106 F.3d at 1250; Blackburn v. City of Marshall, 42 F.3d 925, 931 (5th Cir.1995); U.S. Abatement Corp. v. Mobil Exploration & Producing U.S., Inc., 39 F.3d 556, 559 (5th Cir.1994); Leffall v. Dallas Indep. Sch. Dist., 28 F.3d 521, 524 (5th Cir.1994). "`The question therefore is whether, in the light most favorable to the plaintiff and with every doubt resolved in his behalf, the complaint states any valid claim for relief.'" Shipp v. McMahon, 199 F.3d 256, 260 (5th Cir.2000) (quoting 5 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357, at 601 (1969)).
"`[T]he complaint must contain either direct allegations on every material point necessary to sustain a recovery ... or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial.'" Campbell v. City of San Antonio, 43 F.3d 973, 975 (5th Cir.1995) (quoting 3 CHARLES A. WRIGHT & ARTHUR R. MILLER, *647 FEDERAL PRACTICE AND PROCEDURE: CIVIL 2d § 1216, at 156-59 (1990) (footnote omitted)). "`[A] statement of facts that merely creates a suspicion that the pleader might have a right of action' is insufficient." Id. (quoting 3 CHARLES A. WRIGHT & ARTHUR R. MILLER, supra., at 163 (footnote omitted)). "`Dismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief....'" Id. (quoting 2A JAMES W. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 12.07 [2.-5], at 12-91 (1995) (footnote omitted)). "The court is not required to `conjure up unpled allegations or construe elaborately arcane scripts to' save a complaint." Id. (quoting Gooley v. Mobil Oil Corp., 851 F.2d 513, 514 (1st Cir.1988)). "Further, `conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.'" Id. (quoting Fernandez-Montes, 987 F.2d at 284); accord Jefferson, 106 F.3d at 1250; see Tuchman v. DSC Communications Corp., 14 F.3d 1061, 1067 (5th Cir.1994).

2. Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). The party seeking summary judgment bears the initial burden of informing the court of the basis for his motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which he believes demonstrate the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Colson v. Grohman, 174 F.3d 498, 506 (5th Cir.1999); Marshall v. East Carroll Parish Hosp. Serv. Dist., 134 F.3d 319, 321 (5th Cir.1998); Wenner v. Texas Lottery Comm'n, 123 F.3d 321, 324 (5th Cir.1997), cert. denied, 523 U.S. 1073, 118 S.Ct. 1514, 140 L.Ed.2d 667 (1998). The moving party, however, need not negate the elements of the nonmovant's case. See Wallace v. Texas Tech Univ., 80 F.3d 1042, 1047 (5th Cir.1996) (citing Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)).
Once a proper motion has been made, the nonmoving party may not rest upon mere allegations or denials in the pleadings, but must present affirmative evidence, setting forth specific facts, to show the existence of a genuine issue for trial. See Celotex Corp., 477 U.S. at 322-23, 106 S.Ct. 2548; Anderson, 477 U.S. at 257, 106 S.Ct. 2505; Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-86, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); Colson, 174 F.3d at 506; Marshall, 134 F.3d at 321-22; Wallace, 80 F.3d at 1047; Little, 37 F.3d at 1075. All the evidence must be construed "in the light most favorable to the non-moving party without weighing the evidence, assessing its probative value, or resolving any factual disputes." Williams v. Time Warner Operation, Inc., 98 F.3d 179, 181 (5th Cir.1996) (citing Lindsey v. Prive Corp., 987 F.2d 324, 327 n. 14 (5th Cir.1993)); see Colson, 174 F.3d at 506; Marshall, 134 F.3d at 321; Messer v. Meno, 130 F.3d 130, 134 (5th Cir.1997), cert. denied, 525 U.S. 1067, 119 S.Ct. 794, 142 L.Ed.2d 657 (1999); Hart v. O'Brien, 127 F.3d 424, 435 (5th Cir.1997), cert. denied, 525 U.S. 1103, 119 S.Ct. 868, 142 L.Ed.2d 770 (1999); Songbyrd, Inc. v. Bearsville Records, Inc., 104 F.3d 773, 776 (5th Cir.1997). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255, 106 S.Ct. 2505; Palmer v. BRG of Ga., Inc., 498 U.S. 46, 49 n. 5, 111 S.Ct. 401, 112 L.Ed.2d 349 (1990); see Marshall, 134 F.3d at 321. Nonetheless, "`only reasonable inferences can be drawn from the evidence in favor of the nonmoving party.'" *648 Eastman Kodak Co. v. Image Technical Services, 504 U.S. 451, 469 n. 14, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992) (emphasis in original) (quoting H.L. Hayden Co. of New York, Inc. v. Siemens Med. Sys., Inc., 879 F.2d 1005, 1012 (2d Cir.1989)). "If the [nonmoving party's] theory is ... senseless, no reasonable jury could find in its favor, and summary judgment should be granted." Id. at 468-69.
The nonmovant's burden is not satisfied by "some metaphysical doubt as to material facts," conclusory allegations, unsubstantiated assertions, speculation, the mere existence of some alleged factual dispute, or "only a scintilla of evidence." Little, 37 F.3d at 1075; see Hart, 127 F.3d at 435; Wallace, 80 F.3d at 1047; Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1429 (5th Cir.1996) (citing Forsyth v. Barr, 19 F.3d 1527, 1533 (5th Cir.), cert. denied, 513 U.S. 871, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994)); State Farm Life Ins. Co. v. Gutterman, 896 F.2d 116, 118 (5th Cir. 1990) (citing Anderson, 477 U.S. at 247-48, 106 S.Ct. 2505). Summary judgment is mandated if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to his case on which he bears the burden of proof at trial. See Nebraska v. Wyoming, 507 U.S. 584, 590, 113 S.Ct. 1689, 123 L.Ed.2d 317 (1993); Celotex Corp., 477 U.S. at 322, 106 S.Ct. 2548; Wenner, 123 F.3d at 324. "In such a situation, there can be `no genuine issue as to any material fact' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp., 477 U.S. at 322-23, 106 S.Ct. 2548.
Summary judgment may not be awarded by default, however, merely because the non-moving party has failed to respond. See Hibernia Nat'l Bank v. Administracion Cent. Sociedad Anonima, 776 F.2d 1277, 1279 (5th Cir.1985). "A motion for summary judgment cannot be granted simply because there is no opposition, even if failure to oppose violated a local rule. The movant has the burden of establishing the absence of a genuine issue of material fact and, unless he has done so, the court may not grant the motion, regardless of whether any response was filed." Hetzel v. Bethlehem Steel Corp., 50 F.3d 360, 362 n. 3 (5th Cir.1995) (citing Hibernia Nat'l Bank, 776 F.2d at 1279). Nonetheless, the district court may accept as undisputed the facts set forth in support of the unopposed motion for summary judgment. See Eversley v. MBank Dallas, 843 F.2d 172, 174 (5th Cir.1988); Rayha v. United Parcel Serv., Inc., 940 F.Supp. 1066, 1068 (S.D.Tex.1996).

B. Federal Claims

1. Claims Under 42 U.S.C. § 1983

The Civil Rights Act of 1866, 42 U.S.C. § 1983, creates a private right of action for redressing the violation of federal law by those acting under color of state law. See Migra v. Warren City School District Board of Educ., 465 U.S. 75, 82, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984); Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n, 453 U.S. 1, 19, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981); Maine v. Thiboutot, 448 U.S. 1, 4, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980); Texas Manufactured Hous. Ass'n, Inc. v. City of Nederland, 101 F.3d 1095, 1106 (5th Cir.1996), cert. denied, 521 U.S. 1112, 117 S.Ct. 2497, 138 L.Ed.2d 1003 (1997); McIntosh v. Antonino, 71 F.3d 29, 33 (1st Cir.1995). It provides:
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured....
42 U.S.C. § 1983. "Section 1983 `is not itself a source of substantive rights,' but merely provides `a method for vindicating federal rights conferred elsewhere.'" Albright *649 v. Oliver, 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (quoting Baker v. McCollan, 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979)); accord Graham v. Connor, 490 U.S. 386, 393-94, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989); City of Oklahoma City v. Tuttle, 471 U.S. 808, 816, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985); Jackson v. City of Atlanta, 73 F.3d 60, 63 (5th Cir.), cert. denied, 519 U.S. 818, 117 S.Ct. 70, 136 L.Ed.2d 30 (1996); Young v. City of Killeen, 775 F.2d 1349, 1352 (5th Cir.1985).
To prevail on a § 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States. See Blessing v. Freestone, 520 U.S. 329, 340, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997); Daniels v. Williams, 474 U.S. 327, 330, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); Augustine v. Doe, 740 F.2d 322, 324-25 (5th Cir.1984). A § 1983 complainant must support his claim with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. See Schultea v. Wood, 47 F.3d 1427, 1433 (5th Cir. 1995); Fee v. Herndon, 900 F.2d 804, 807 (5th Cir.), cert. denied, 498 U.S. 908, 111 S.Ct. 279, 112 L.Ed.2d 233 (1990); Jacquez v. Procunier, 801 F.2d 789, 793 (5th Cir. 1986); Angel v. City of Fairfield, 793 F.2d 737, 739 (5th Cir.1986).
Thus, for Casanova to recover, he must show that the defendants deprived him of a right guaranteed by the Constitution or the laws of the United States. See Daniels, 474 U.S. at 329-31, 106 S.Ct. 662; Baker, 443 U.S. at 139, 99 S.Ct. 2689; Thomas v. Sams, 734 F.2d 185, 190-91 (5th Cir.1984), cert. denied, 472 U.S. 1017, 105 S.Ct. 3476, 87 L.Ed.2d 612 (1985). Casanova must also prove that the alleged constitutional or statutory deprivation was intentional or due to deliberate indifference not the result of mere negligence. See Farmer v. Brennan, 511 U.S. 825, 828-29, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); Davidson v. Cannon, 474 U.S. 344, 348, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986); Daniels, 474 U.S. at 328, 106 S.Ct. 677; Estelle v. Gamble, 429 U.S. 97, 105, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). The negligent deprivation of life, liberty, or property is not a constitutional violation. See Campbell, 43 F.3d at 977; Fraire v. City of Arlington, 957 F.2d 1268, 1276 (5th Cir.), cert. denied, 506 U.S. 973, 113 S.Ct. 462, 121 L.Ed.2d 371 (1992); Herrera v. Millsap, 862 F.2d 1157, 1160 (5th Cir. 1989); Simmons v. McElveen, 846 F.2d 337, 339 (5th Cir.1988); Young, 775 F.2d at 1353. Thus, a § 1983 plaintiff has "no constitutional right to be protected from [a police officer's] merely negligent conclusion" concerning his involvement in criminal activity. Campbell, 43 F.3d at 977. Moreover, to hold a defendant liable under § 1983, Casanova must adduce facts demonstrating the defendant's participation in the alleged wrong. See Murphy v. Kellar, 950 F.2d 290, 292 (5th Cir.1992); Jacquez, 801 F.2d at 793.

2. Statute of Limitations

Initially, Garcia and Waller argue that Casanova's § 1983 claims are untimely. There is no specific federal statute of limitations governing claims brought under 42 U.S.C. § 1983. Federal courts, therefore, look to the law of the state in which the action arose to determine the appropriate limitations period, usually borrowing the state's general personal injury limitations period. See Hardin v. Straub, 490 U.S. 536, 538, 109 S.Ct. 1998, 104 L.Ed.2d 582 (1989); Owens v. Okure, 488 U.S. 235, 236, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989); Wilson v. Garcia, 471 U.S. 261, 269, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985); Burns v. Harris County Bail Bond Bd., 139 F.3d 513, 518 (5th Cir.1998); Flores v. Cameron County, 92 F.3d 258, 271 (5th Cir.1996); Piotrowski v. City of Houston, 51 F.3d 512, 514 n. 5 (5th Cir.1995); Jackson v. Johnson, 950 F.2d 263, 265 (5th Cir.1992). It is undisputed that the events giving rise to the case at bar occurred in Texas. Under Texas law, however, there *650 are two sections of the Civil Practice and Remedies Code that might apply. "A person must bring suit for malicious prosecution not later than one year after the day the cause of action accrues." See TEX.CIV. PRAC. & REM.CODE ANN. § 16.002. Under the general personal injury statute, however, "[a] person must bring suit for ... personal injury ... not later than two years after the day the cause of action accrues." TEX. CIV.PRAC. & REM.CODE ANN. § 16.003(a). "[W]here state law provides multiple statutes of limitations for personal injury actions, courts considering § 1983 claims should borrow the general or residual statute for personal injury actions." Owens, 488 U.S. at 250, 109 S.Ct. 573. Because § 1983 claims are most analogous to Texas personal injury claims, the applicable statute of limitations is two years, as set forth in § 16.003 of the Texas Civil Practice and Remedies Code. See Gonzales v. Wyatt, 157 F.3d 1016, 1020 (5th Cir.1998); Burns, 139 F.3d at 518; Flores, 92 F.3d at 271; Piotrowski, 51 F.3d at 514 n. 5; Jackson, 950 F.2d at 265.
While state law determines the limitations period, federal law determines when a cause of action accrues. See Board of Regents v. Tomanio, 446 U.S. 478, 483-86, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980); Burns, 139 F.3d at 518; Jackson, 950 F.2d at 265; Brummett v. Camble, 946 F.2d 1178, 1184 (5th Cir.1991), cert. denied, 504 U.S. 965, 112 S.Ct. 2323, 119 L.Ed.2d 241 (1992); Helton v. Clements, 832 F.2d 332, 334-35 (5th Cir.1987). "Under federal law, a cause of action accrues `when the plaintiff knows or has reason to know of the injury which is the basis of the action.'" Burns, 139 F.3d at 518 (quoting Burrell v. Newsome, 883 F.2d 416, 418 (5th Cir. 1989)); accord Gonzales, 157 F.3d at 1020; Rodriguez v. Holmes, 963 F.2d 799, 802 (5th Cir.1992); Jackson, 950 F.2d at 265; Helton, 832 F.2d at 335. A claim for malicious prosecution does not accrue until the criminal action is terminated in the plaintiff's favor. See Heck v. Humphrey, 512 U.S. 477, 489, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994); Eugene v. Alief Indep. Sch. Dist., 65 F.3d 1299, 1306 (5th Cir.1995), cert. denied, 517 U.S. 1191, 116 S.Ct. 1680, 134 L.Ed.2d 782 (1996); Brandley v. Keeshan, 64 F.3d 196, 199 (5th Cir.1995), cert. denied, 516 U.S. 1129, 116 S.Ct. 947, 133 L.Ed.2d 872 (1996); Brummett, 946 F.2d at 1184. Moreover, when false arrest and imprisonment claims are essentially part of a broader claim alleging a malicious prosecution conspiracy, a cause of action for false arrest and imprisonment accrues at the same time as the cause of action for malicious prosecution. See Brandley, 64 F.3d at 199; Robinson v. Maruffi, 895 F.2d 649, 655 (10th Cir.1990); Johnson v. Davenport, No. 3-98CV2227-R, 2000 WL 341255, at *2-3 (N.D.Tex. Mar. 31, 2000); Jacobs v. Port Neches Police Dep't, No. 1:94-CV-767, 1996 WL 363023, at *5 (E.D.Tex. June 26, 1996).
Here, Casanova's assault, false arrest, and malicious prosecution claims have been timely raised. Garcia and Waller argue that Casanova's claims accrued on September 3, 1997, the date of his arrest. Under controlling law, however, they did not accrue until September 9, 1998, at the earliest, the date the controlled substance charge against Casanova was dismissed. See Brandley, 64 F.3d at 199; Brummett, 946 F.2d at 1184; Johnson, 2000 WL 341255, at *3. As discussed above, the claims are subject to a two-year limitations period. See Brandley, 64 F.3d at 198; Brummett, 946 F.2d at 1184. "Thus, [the plaintiff], as a matter of law, is not precluded by the statute of limitations for [his] illegal arrest, malicious prosecution, and [assault] claims because [he] filed [his] § 1983 claim within the two year time period." See Johnson, 2000 WL 341255, at *3. Accordingly, Casanova's claims are not time-barred.

3. False Arrest

Garcia and Waller contend that Casanova's amended complaint fails to state a claim for false arrest under § 1983. Garcia alternatively asserts that he is entitled *651 to summary judgment on such a claim if it is properly advanced. A claim of false arrest implicates guarantees of the Fourth and Fourteenth Amendments and, therefore, is actionable under § 1983. See Sorenson v. Ferrie, 134 F.3d 325, 328 (5th Cir.1998); Eugene, 65 F.3d at 1305; Sanders v. English, 950 F.2d 1152, 1159 (5th Cir.1992); Thomas v. Kippermann, 846 F.2d 1009, 1011 (5th Cir.1988). Under Texas law, to establish the intentional tort of false arrest, the plaintiff must show (1) willful detention, (2) without consent, and (3) without authority of law. See Hart, 127 F.3d at 450; Pete v. Metcalfe, 8 F.3d 214, 218 (5th Cir.1993); Gladden v. Roach, 864 F.2d 1196, 1201 (5th Cir.), cert. denied, 491 U.S. 907, 109 S.Ct. 3192, 105 L.Ed.2d 700 (1989); Garza v. United States, 881 F.Supp. 1103, 1107 (S.D.Tex.1995); Sears, Roebuck & Co. v. Castillo, 693 S.W.2d 374, 375 (Tex.1985). Under § 1983, the plaintiff must also prove the deprivation of a constitutional right, i.e., an illegality under color of state law. See Harper v. Merckle, 638 F.2d 848, 860 (5th Cir.), cert. denied, 454 U.S. 816, 102 S.Ct. 93, 70 L.Ed.2d 85 (1981). In view of the necessity of proving the deprivation of a constitutional right, false arrest claims brought under § 1983 cannot be viewed exclusively in terms of traditional tort law concepts. See id. at 860 n. 19 (citing Baker, 443 U.S. at 142, 99 S.Ct. 2689).
The Fourth Amendment protects individuals from unfounded arrests by requiring reasonable grounds to believe a crime has been committed. See Street v. Surdyka, 492 F.2d 368, 372 (4th Cir.1974). There is no cause of action for false arrest under § 1983 unless the arresting officer lacked probable cause. See Sorenson, 134 F.3d at 329; United States v. Wadley, 59 F.3d 510, 512 (5th Cir.1995), cert. denied, 519 U.S. 895, 117 S.Ct. 240, 136 L.Ed.2d 169 (1996); Fields v. City of South Houston, 922 F.2d 1183, 1189 (5th Cir.1991); Bodzin v. City of Dallas, 768 F.2d 722, 724 (5th Cir.1985); Street, 492 F.2d at 372-73. If there was probable cause for the arrest, a claim for false arrest is not viable. See Sorenson, 134 F.3d at 329; Wells v. Bonner, 45 F.3d 90, 95 (5th Cir.1995). To determine the presence or absence of probable cause, the totality of the circumstances surrounding the arrest must be considered. See Ornelas v. United States, 517 U.S. 690, 696-97, 116 S.Ct. 1657, 1661-62, 134 L.Ed.2d 911 (1996); United States v. Maslanka, 501 F.2d 208, 212 (5th Cir. 1974), cert. denied, 421 U.S. 912, 95 S.Ct. 1567, 43 L.Ed.2d 777 (1975).
"Whether that arrest was constitutionally valid depends in turn upon whether, at the moment the arrest was made, the officers had probable cause to make it  whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that [the arrestee] had committed or was committing an offense."
Maslanka, 501 F.2d at 212 (quoting Beck v. Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964)); accord Sorenson, 134 F.3d at 328; see also Hart, 127 F.3d at 444; Blackwell v. Barton, 34 F.3d 298, 303 (5th Cir.1994). "`[P]robable cause is a fluid concept  turning on the assessment of probabilities in particular factual contexts not readily, or even usefully, reduced to a neat set of legal rules.'" Fields, 922 F.2d at 1189 (quoting Illinois v. Gates, 462 U.S. 213, 232, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). Probable cause does not require proof beyond a reasonable doubt, but only a showing of the probability that criminal activity has occurred. See Hart, 127 F.3d at 444; see also United States v. Brown, 941 F.2d 1300, 1302 (5th Cir.), cert. denied, 502 U.S. 1008, 112 S.Ct. 648, 116 L.Ed.2d 665 (1991). As the Supreme Court has explained:
The principal components of a determination of reasonable suspicion or probable cause will be the events which occurred leading up to the stop or search, and then the decision whether these historical facts, viewed from the standpoint *652 of an objectively reasonable police officer, amount to reasonable suspicion or probable cause.
Ornelas, 517 U.S. at 696-97; see also Terry v. Ohio, 392 U.S. 1, 29, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). "The observation of unusual activity for which there is no legitimate, logical explanation can be the basis for probable cause." Hart, 127 F.3d at 444 (quoting United States v. Alexander, 559 F.2d 1339, 1343 (5th Cir.1977), cert. denied, 434 U.S. 1078, 98 S.Ct. 1271, 55 L.Ed.2d 785 (1978)).
Undisputed evidence that an arrest was effectuated under a facially valid arrest warrant satisfies the Fourth Amendment prerequisites and forecloses a § 1983 claim for false arrest. See Baker, 443 U.S. at 139, 99 S.Ct. 2689 (detention under valid warrant does not amount to deprivation without due process of law); Burt v. Ferrese, 871 F.2d 14, 16 (3d Cir. 1989); Rykers v. Alford, 832 F.2d 895, 898 (5th Cir.1987); Smith v. Gonzales, 670 F.2d 522, 526 (5th Cir.), cert. denied, 459 U.S. 1005, 103 S.Ct. 361, 74 L.Ed.2d 397 (1982). "Such an arrest is not unconstitutional, and a complaint based on such an arrest is subject to dismissal for failure to state a claim." Thomas, 734 F.2d at 190-91; see also White v. Olig, 56 F.3d 817, 820 (7th Cir.1995); Juriss v. McGowan, 957 F.2d 345, 350 (7th Cir.1992); Mensh v. Dyer, 956 F.2d 36, 39-40 (4th Cir.1991). Moreover, "a warrant is valid even though the court, through lack of information or otherwise, has issued it for the arrest of a person in fact innocent of the offense alleged." Rodriguez v. Ritchey, 556 F.2d 1185, 1190 n. 21 (5th Cir.1977), cert. denied, 434 U.S. 1047, 98 S.Ct. 894, 54 L.Ed.2d 799 (1978) (quoting RESTATEMENT (SECOND) OF TORTS § 123 cmt. a (1965)). "The Constitution does not guarantee that only the guilty will be arrested." Baker, 443 U.S. at 145, 99 S.Ct. 2689. In this instance, it is undisputed that Casanova was arrested pursuant to a facially valid arrest warrant issued by Waller. Thus, Casanova has failed to allege facts from which it could be inferred that his arrest was without probable cause.
Moreover, on March 4, 1997, a grand jury indicted Casanova in Cause No. 97-03-8838 for delivery of a controlled substance (cocaine). The return of an indictment against a defendant establishes probable cause as a matter of law. See Campbell, 43 F.3d at 976; Ex parte Branch, 553 S.W.2d 380, 381 (Tex.Crim. App.1977).
Although no standard, whether of probable cause or otherwise, is imposed on the grand jury by the [Texas] Constitution (art. 1 § 10) or statute ([CCP] art. 20.09), it has been held that "the return of a true bill by the grand jury satisfies the principal purpose and justification for [an examining trial]  [the determination] that there is probable cause to believe the accused committed the crime charged."
Ex parte Robinson, 641 S.W.2d 552, 556 n. 9 (Tex.Crim.App.1982) (quoting Brown v. State, 475 S.W.2d 938, 946 (Tex.Crim.App. 1971), overruled on other grounds, Bradford v. State, 608 S.W.2d 918 (Tex.Crim. App.1980)). "The standard for probable cause to indict is the same as that for probable cause to arrest." Ex parte Thomas, 956 S.W.2d 782, 786 (Tex.App. Waco 1997, no pet.) (citing Garcia v. State, 775 S.W.2d 879, 881 (Tex.App.San Antonio 1989, no pet.)). "`[T]he grand jury's determination that probable cause existed for the indictment also establishes that element for the purpose of issuing a warrant for the apprehension of the person charged.'" Campbell, 43 F.3d at 976 (quoting Giordenello v. United States, 357 U.S. 480, 487, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958)). An indictment "conclusively determines the existence of probable cause and requires issuance of an arrest warrant without further inquiry." Gerstein v. Pugh, 420 U.S. 103, 118 n. 19, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975).
In addition, the return of an indictment renders moot any prior question concerning the propriety of detention. As the *653 Texas Court of Criminal Appeals observed in Branch, "[t]he return of an indictment establishes probable cause as a matter of law. Therefore, the question of probable cause to hold appellant has been rendered moot." 553 S.W.2d at 381. "It is well settled that if facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party." Taylor v. Gregg, 36 F.3d 453, 456 (5th Cir.1994); see Hand v. Gary, 838 F.2d 1420, 1427 (5th Cir.1988). "Under Gerstein, a constitutionally sufficient neutral determination of probable cause to arrest may be made in any of three ways: by the issuance of a warrant, by a post-arrest hearing before a magistrate, or by an indictment `fair on its face' and returned `before a properly constituted grand jury.'" Wheeler v. Cosden Oil & Chem. Co., 734 F.2d 254, 258-59 (5th Cir. 1984) (quoting 420 U.S. at 117 n. 19, 95 S.Ct. 854).
Therefore, in view of the indictment returned against Casanova and the facially valid warrant issued for his arrest, probable cause existed for the arrest of Casanova. Accordingly, Casanova is precluded from maintaining a cause of action for false arrest under § 1983.

4. Malicious Prosecution

Garcia and Waller further argue that Casanova's amended complaint fails to state a claim for malicious prosecution under § 1983, and Garcia contends that he is entitled to summary judgment on any such claim. The United States Court of Appeals for the Fifth Circuit has recognized the existence of a clearly established constitutional right to be free from bad faith or malicious prosecutions sufficient to support a claim under 42 U.S.C. § 1983. See Goodson v. City of Corpus Christi, 202 F.3d 730, 740 (5th Cir.2000) (citing Sanders, 950 F.2d at 1163); Kerr v. Lyford, 171 F.3d 330, 339 (5th Cir.1999); Evans v. Ball, 168 F.3d 856, 862 n. 9 (5th Cir.1999); Eugene, 65 F.3d at 1303, 1305; Brummett, 946 F.2d at 1180-81. The United States Supreme Court has held that no such right is encompassed within the concept of substantive due process under the Fourteenth Amendment. See Albright v. Oliver, 510 U.S. at 275, 114 S.Ct. 807. The Fifth Circuit, however, has found such a right to arise under the Fourth Amendment, noting that "Albright ... left undisturbed our circuit's longstanding recognition of a Fourth Amendment right to be free from malicious prosecution." Kerr, 171 F.3d at 339 (citing Albright, 510 U.S. at 275, 114 S.Ct. 807); Evans, 168 F.3d at 862 n. 9; Eugene, 65 F.3d at 1303, 1305.
To prevail on a malicious prosecution claim under § 1983, the plaintiff must show that (1) a criminal action was commenced against him, (2) the prosecution was caused or aided by the defendant, (3) the action terminated in the plaintiff's favor, (4) the plaintiff was innocent, (5) the defendant acted without probable cause, (6) the defendant acted with malice, (7) and the criminal proceeding damaged the plaintiff. See Goodson, 202 F.3d at 740-41; Kerr, 171 F.3d at 340; Evans, 168 F.3d at 862 n. 9; Hayter v. City of Mount Vernon, 154 F.3d 269, 275 (5th Cir.1998); Taylor, 36 F.3d at 455. Probable cause in this context means "`the existence of such facts and circumstances as would excite the belief, in a reasonable mind, acting on facts within the knowledge of the prosecutor, that the person charged was guilty of the crime for which he was prosecuted.'" Kerr, 171 F.3d at 340 (quoting Moore v. McDonald, 30 F.3d 616, 620 n. 2 (5th Cir.1994)). The existence of probable cause is an absolute bar to maintaining an action for malicious prosecution under the Fourth Amendment. See Kerr, 171 F.3d at 341-42; Roche v. John Hancock Mut. Life Ins. Co., 81 F.3d 249, 256 n. 5 (1st Cir.1996); Biddle v. Martin, 992 F.2d 673, 678 (7th Cir.1993). To the extent the facts underlying the probable cause determination are undisputed, the court may resolve the issue as a matter of law. See Kerr, *654 171 F.3d at 340; Blackwell, 34 F.3d at 305. To defeat summary judgment, the plaintiff "must demonstrate that either (1) the record affirmatively establishes that probable cause was lacking or (2) enough genuine, material factual disputes exist regarding the elements of probable cause that the ultimate finding of probable cause is the subject of a genuine, material factual dispute." Kerr, 171 F.3d at 340.
Generally, as discussed above, the return of an indictment by a grand jury establishes probable cause to believe that the accused committed the offense charged. See Campbell, 43 F.3d at 976; United States v. Garcia, 27 F.3d 1009, 1014 (5th Cir.1994); Branch, 553 S.W.2d at 381. As the Supreme Court has noted:
The grand jury's historic functions survive to this day. Its responsibilities continue to include both the determination whether there is probable cause to believe a crime has been committed and the protection of citizens against unfounded criminal prosecutions.
United States v. Calandra, 414 U.S. 338, 343, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974) (citing Branzburg v. Hayes, 408 U.S. 665, 686-87, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972)). "`[T]he grand jury's determination that probable cause exist[s] for the indictment also establishes that element for the purpose of issuing a warrant for the apprehension of the person charged.'" Campbell, 43 F.3d at 976 (quoting Giordenello, 357 U.S. at 487, 78 S.Ct. 1245). Nevertheless, "simply obtaining an indictment is not enough to insulate state actors from an action for malicious prosecution under § 1983." Hand, 838 F.2d at 1426. "The probable cause for the indictment must not be tainted by malicious actions" of government officials. Cornett v. Longois, 871 F.Supp. 918, 922 (E.D.Tex.1994) (citing Hand, 838 F.2d at 1426). Similarly, if obtained by improper means, "the issuance of a valid warrant will not shield the officers from liability for malicious prosecution." Hart, 127 F.3d at 451. In the absence of evidence that material facts were withheld or that the deliberations of the grand jury or other intermediary were otherwise tainted by the actions of the defendant, however, no liability for malicious prosecution can attach. See Taylor, 36 F.3d at 457; Hand, 838 F.2d at 1428.
Malicious prosecution requires, among other elements, not only that there is a lack of probable cause, but also that the defendant acted with malice. See Campbell, 43 F.3d at 981. For a claim of malicious prosecution to be actionable, the proceedings must have been initiated primarily for a purpose other than that of bringing an offender to justice. See RESTATEMENT (SECOND) OF TORTS § 668 (1977). State actors other than prosecutors may be liable for damages for bad faith prosecution if they join in a malicious prosecution by prosecutors or if their malice results in an improperly motivated prosecution without probable cause. See Patterson v. Armatys, 808 F.Supp. 550, 552 (E.D.Tex.1992). Maliciously tendering false information, or deliberately concealing or deliberately failing to disclose exculpatory information, can give rise to an inference that the defendant acted with malice in initiating or maintaining a prosecution. See Martin v. Thomas, 973 F.2d 449, 457 (5th Cir.1992); Sanders, 950 F.2d at 1163; Wheeler, 734 F.2d at 260. A cause of action for malicious prosecution is not cognizable, however, where there is no allegation of malice, ill will, or improper purpose, or that the defendant's conduct was the result of other than an honest, though negligent, mistake. Campbell, 43 F.3d at 981. Hence, an affidavit in support of an arrest warrant that omits arguable facts, but does not misrepresent material facts, does not negate probable cause. See Morin v. Caire, 77 F.3d 116, 122 (5th Cir.1996). In essence, a plaintiff seeking recovery from a government official for a constitutional tort must tender evidence establishing misconduct that exceeds mere negligence. Sanders, 950 F.2d at 1159.
*655 "Termination of the prosecution in the accused's favor is an essential element" of a malicious prosecution claim. Evans, 168 F.3d at 859; Taylor, 36 F.3d at 455-56; Brummett, 946 F.2d at 1183; Singleton v. City of New York, 632 F.2d 185, 193 (2d Cir.1980), cert. denied, 450 U.S. 920, 101 S.Ct. 1368, 67 L.Ed.2d 347 (1981). The rule in the Fifth Circuit is that "proceedings terminate in favor of the accused only when they affirmatively indicate that he is not guilty." Evans, 168 F.3d at 859. Hence, a pre-trial diversion agreement or any situation in which the accused "agreed to do something in exchange for the government's dropping the charges" does not constitute a favorable termination. Id.; see Taylor, 36 F.3d at 455-56. Rather, "the disposition must affirmatively indicate a lack of guilt." Evans, 168 F.3d at 859. Indeed, even the outright dismissal of charges may not constitute a termination in the plaintiff's favor where there is no resolution of any of the factual elements of the offense and jeopardy does not attach. See Johnson, 2000 WL 341255, at *6-7; Ledesma v. Dillard Dep't Stores, Inc., 818 F.Supp. 983, 986 (N.D.Tex.1993). Instead, the dismissal must affirmatively indicate that the plaintiff was not guilty. See Johnson, 2000 WL 341255, at *7. "Plaintiff's innocence must be clearly defined to prevent relitigation of the criminal proceeding in a civil trial." Id. Here, it is arguable whether the dismissal of the charges against Casanova affirmatively indicates that he was not guilty of the offense charged.
In any event, Casanova has failed to provide evidence of malice. The complaint filed against Casanova reflects that Garcia received information from Barr, a fellow law enforcement officer acting in an undercover capacity, that Casanova had sold cocaine to Barr. There is no indication that Garcia was aware or suspected that Barr's information was incorrect or unreliable. "[O]fficers may submit warrant applications containing hearsay, including, of course, information provided by other officers." Bennett v. City of Grand Prairie, 883 F.2d 400, 407 (5th Cir.1989) (citing Franks v. Delaware, 438 U.S. 154, 165, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978); United States v. Ventresca, 380 U.S. 102, 111, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); Aguilar v. Texas, 378 U.S. 108, 111, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); United States v. De Los Santos, 810 F.2d 1326, 1336 (5th Cir.), cert. denied, 484 U.S. 978, 108 S.Ct. 490, 98 L.Ed.2d 488 (1987); United States v. Webster, 750 F.2d 307, 323 (5th Cir.1984), cert. denied, 471 U.S. 1106, 105 S.Ct. 2340, 85 L.Ed.2d 855 (1985); United States v. Kolodziej, 706 F.2d 590, 598-99 (5th Cir. 1983); Williams v. Maggio, 679 F.2d 381, 391 (5th Cir.1982), cert. denied, 463 U.S. 1214, 103 S.Ct. 3553, 77 L.Ed.2d 1399 (1983)). In this situation, it cannot be inferred that Garcia or Waller acted with malice when instituting criminal proceedings against Casanova. Accordingly, Casanova cannot satisfy all the elements of a cognizable claim for malicious prosecution under § 1983.

5. Governmental Liability under § 1983

Waller also asserts that Casanova's § 1983 claims should be dismissed, as he fails to allege a policy or custom of the county authorizing or condoning false arrests or malicious prosecutions. In addition, Waller maintains that Casanova has failed to allege that any policy or custom of the county was the proximate cause of his arrest or prosecution.
Whether the claim is one of false arrest or malicious prosecution, the key to recovering against a governmental entity under § 1983 is demonstrating that a deprivation of a constitutional right was inflicted pursuant to an official policy or custom. See Flores, 92 F.3d at 263; Campbell, 43 F.3d at 977. The United States Supreme Court has expressly held that local governmental entities may be sued directly under § 1983 where "the action that is alleged to be unconstitutional implements or executes a policy statement, *656 ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Monell v. Department of Social Servs., 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); see Languirand v. Hayden, 717 F.2d 220, 223 (5th Cir.1983), cert. denied, 467 U.S. 1215, 104 S.Ct. 2656, 81 L.Ed.2d 363 (1984). A governmental entity may also be sued "for constitutional deprivations visited pursuant to governmental `custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." Monell, 436 U.S. at 690-91, 98 S.Ct. 2018; see also Languirand, 717 F.2d at 223. The Fifth Circuit has defined official policy or custom as:
1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.
Johnson v. Moore, 958 F.2d 92, 94 (5th Cir.1992) (quoting Bennett v. City of Slidell, 735 F.2d 861, 862 (5th Cir.1984), cert. denied, 472 U.S. 1016, 105 S.Ct. 3476, 87 L.Ed.2d 612 (1985)); accord Eugene, 65 F.3d at 1304.
The Supreme Court has identified two types of "policies" under which a governmental entity may be held liable. See Pembaur v. City of Cincinnati, 475 U.S. 469, 480-81, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). One type of "policy" is characterized by formal rules and understandings which constitute fixed plans of action to be followed under similar circumstances consistently and over time. See id. Another type of "policy" exists when a governmental entity takes a course of action tailored to a specific situation and not intended to control decisions in later situations. See id. at 481, 106 S.Ct. 1292. Under this second type of "policy," a governmental entity can be liable only if the decision to adopt that particular course of action is properly made by that government's authorized decisionmakers. See id. Such "authorized decisionmakers" are defined to be officials "`whose acts or edicts may fairly be said to represent official policy'" and whose decisions may therefore give rise to governmental liability under § 1983. Id. at 480, 106 S.Ct. 1292 (quoting Monell, 436 U.S. at 694, 98 S.Ct. 2018). State law determines whether a particular individual is a final decisionmaker of a governmental entity with respect to a certain sphere of activity. See Bennett v. Pippin, 74 F.3d 578, 586 (5th Cir.), cert. denied, 519 U.S. 817, 117 S.Ct. 68, 136 L.Ed.2d 29 (1996) (citing Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 737, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989); City of St. Louis v. Praprotnik, 485 U.S. 112, 124, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988); Doe v. Rains County Indep. Sch. Dist., 66 F.3d 1402, 1407 (5th Cir.1995)). The Fifth Circuit has held that, under Monell, when a final policymaker makes a decision, and that decision is within the sphere of the policymaker's final authority, "`the existence of a well-established, officially-adopted policy will not insulate the municipality from liability.'" Bennett, 74 F.3d at 586 (quoting Gonzalez v. Ysleta Indep. Sch. Dist., 996 F.2d 745, 754 (5th Cir. 1993)). Furthermore, "a single decision by a policy maker may, under certain circumstances, constitute a policy for which the county may be liable." Brown v. Bryan County, 219 F.3d 450, 462 (5th Cir.2000).
"If actions of city employees are to be used to prove a custom for which the municipality is liable, those actions must have occurred for so long or so frequently *657 that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees." Webster v. City of Houston, 735 F.2d 838, 842 (5th Cir.1984). Consistent with the commonly understood meaning of custom, proof of random acts or isolated incidents involving employees is not sufficient to show the existence of a custom or policy. See Fraire, 957 F.2d at 1278 (citing Rodriguez, 871 F.2d at 554); accord Thompson v. City of Los Angeles, 885 F.2d 1439, 1443-44 (9th Cir.1989). "`Isolated violations are not the persistent, often repeated constant violations that constitute custom and policy' as required for municipal section 1983 liability." Campbell, 43 F.3d at 977 (quoting Bennett v. City of Slidell, 728 F.2d 762, 768 n. 3 (5th Cir.1984), cert. denied, 472 U.S. 1016, 105 S.Ct. 3476, 87 L.Ed.2d 612 (1985)). To demonstrate a governmental policy or custom under § 1983, a plaintiff must at least show:
a pattern of similar incidents in which citizens were injured or endangered by intentional or negligent police misconduct and/or that serious incompetence or misbehavior was general or widespread throughout the police force.
Fraire, 957 F.2d at 1278 (citing Languirand, 717 F.2d at 227-228). Only if the plaintiff shows that his injury resulted from a "`permanent and well-settled'" practice may liability attach for injury resulting from a local government custom. See Praprotnik, 485 U.S. at 127, 108 S.Ct. 915 (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 168, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)).
Moreover, a governmental entity does not incur liability under § 1983 unless there exists "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." City of Canton v. Harris, 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); see Piotrowski, 51 F.3d at 517; Burns v. City of Galveston, 905 F.2d 100, 102 (5th Cir. 1990). Specifically, "the plaintiff must initially allege that an official policy or custom `was a cause in fact of the deprivation of rights inflicted.'" Spiller v. City of Texas City, 130 F.3d 162, 167 (5th Cir.1997) (quoting Leffall, 28 F.3d at 525). Nevertheless, "[t]his connection must be more than a mere `but for' coupling between cause and effect." Fraire, 957 F.2d at 1281 (citing City of Canton, 489 U.S. at 386, 109 S.Ct. 1197; Tuttle, 471 U.S. at 823, 105 S.Ct. 2427). The plaintiff must also establish that a government policy or custom was the proximate cause of the injuries sustained. See Huffman v. County of Los Angeles, 147 F.3d 1054, 1059 (9th Cir.1998), cert. denied, 526 U.S. 1038, 119 S.Ct. 1333, 143 L.Ed.2d 498 (1999); Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996), cert. denied, 520 U.S. 1117, 117 S.Ct. 1249, 137 L.Ed.2d 330 (1997); Kneipp v. Tedder, 95 F.3d 1199, 1213 (3d Cir.1996); Horn by Parks v. Madison County Fiscal Ct., 22 F.3d 653, 659 (6th Cir.), cert. denied, 513 U.S. 873, 115 S.Ct. 199, 130 L.Ed.2d 130 (1994); Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir.1990); Doe v. District of Columbia, 701 F.2d 948, 953 (D.C.Cir.1983); Rheuark v. Shaw, 628 F.2d 297, 305 (5th Cir.1980), cert. denied, 450 U.S. 931, 101 S.Ct. 1392, 67 L.Ed.2d 365 (1981); Daniels v. Gilbreath, 668 F.2d 477, 480 (10th Cir.1982). "Pointing to a municipal policy action or inaction as a `but-for' cause is not enough to prove a causal connection under Monell. Rather, the policy must be the proximate cause of the section 1983 injury." Van Ort v. Estate of Stanewich, 92 F.3d 831, 837 (9th Cir.1996), cert. denied, 519 U.S. 1111, 117 S.Ct. 950, 136 L.Ed.2d 837 (1997) (citing Mann v. City of Tucson, 782 F.2d 790, 793 (9th Cir.1986)).
In addition, the "plaintiff must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." Board of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, *658 411-12, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). As the Supreme Court has explained:
[I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the `moving force' behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.
Brown, 520 U.S. at 404, 117 S.Ct. 1382; see also Spiller, 130 F.3d at 167 (quoting Meadowbriar Home For Children, Inc. v. Gunn, 81 F.3d 521, 533 (5th Cir.1996)). "Congress did not intend municipalities to be held liable unless deliberate action attributable to the municipality directly caused a deprivation of federal rights." Brown, 520 U.S. at 415, 117 S.Ct. 1382. Thus, plaintiffs seeking to recover against a governmental entity under § 1983 "must first prove a direct causal link between the [governmental] policy and the constitutional deprivation; they then must establish that the [county] consciously enacted a policy reflecting `deliberate indifference' to the constitutional rights of its citizens." Snyder v. Trepagnier, 142 F.3d 791, 795-96 (5th Cir.1998), cert. granted, 525 U.S. 1098, 119 S.Ct. 863, 142 L.Ed.2d 716, cert. dismissed, 526 U.S. 1083, 119 S.Ct. 1493, 143 L.Ed.2d 575 (1999) (citing City of Canton, 489 U.S. at 389, 109 S.Ct. 1197); see Hare v. City of Corinth, 74 F.3d 633, 649 n. 4 (5th Cir.1996). "[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Brown, 520 U.S. at 410, 117 S.Ct. 1382.
Furthermore, a governmental entity may not be held liable for the acts of its employees under a theory of respondeat superior. See Monell, 436 U.S. at 694, 98 S.Ct. 2018; Piotrowski, 51 F.3d at 517; Colle v. Brazos County, 981 F.2d 237, 244 (5th Cir.1993); Williams v. Luna, 909 F.2d 121, 123 (5th Cir.1990); Rodriguez v. Avita, 871 F.2d 552, 554 (5th Cir.), cert. denied, 493 U.S. 854, 110 S.Ct. 156, 107 L.Ed.2d 114 (1989); Hickman v. U.G. Lively Transit Authority, 897 F.Supp. 955, 958 (S.D.Tex.1995). "Municipalities are not vicariously liable for the actions of their employees under § 1983. Municipal liability inures only when the execution of a local government's policy or custom causes the injury." Baker, 75 F.3d at 200. In order to hold a governmental entity liable for the acts of a nonpolicymaking employee, the plaintiff must allege and prove that: "(1) a policy or custom existed; (2) the governmental policy makers actually or constructively knew of its existence; (3) a constitutional violation occurred; and (4) the custom or policy served as the moving force behind the violation." Meadowbriar Home for Children, Inc., 81 F.3d at 532-33. "Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." Brown, 520 U.S. at 405, 117 S.Ct. 1382 (citing City of Canton, 489 U.S. at 391-92, 109 S.Ct. 1197). "These requirements must not be diluted for `[w]here a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into respondeat superior liability.'" Snyder, 142 F.3d at 796 (quoting Brown, 520 U.S. at 415, 117 S.Ct. 1382).
In this case, Casanova has merely alleged:
Waller County maliciously prosecuted the plaintiff for the alleged delivery of a controlled substance after they knew that no crime could be proven against the plaintiff. This malicious prosecution was due to the customs and policy of Waller County or in the alternative was due to a failure to train.
*659 Casanova has failed to articulate a policy or custom of Waller authorizing or condoning false arrests, malicious prosecutions, or lack of training of police officers. Moreover, Casanova does not aver that any specific policy or custom of Waller was the proximate cause of his arrest or prosecution. Waller cannot be held liable for the acts or omissions of its employees in the absence of a direct causal relationship between a municipal policy or custom and Casanova's arrest or prosecution. See Brown, 520 U.S. at 404, 117 S.Ct. 1382; City of Canton, 489 U.S. at 385, 109 S.Ct. 1197; Spiller, 130 F.3d at 167; Meadowbriar Home For Children, Inc., 81 F.3d at 533; Piotrowski, 51 F.3d at 517. Further, Casanova does not allege that Waller displayed deliberate indifference to a risk that his constitutional rights could be violated or that Waller was the moving force behind his injury. See Brown, 520 U.S. at 415, 117 S.Ct. 1382. Consequently, Casanova's § 1983 claims against Waller must fail.

6. Claims Against Garcia in his Official Capacity

In the case at bar, Casanova is suing Garcia both individually and in his official capacity as the Brookshire Police Chief, alleging that Garcia violated his federal constitutional rights. To the extent he is sued in his official capacity, Garcia's liability is coextensive with that of Brookshire. Official-capacity lawsuits are typically an alternative means of pleading an action against the governmental entity involved. See Hafer v. Melo, 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991). A suit against an official in his or her official capacity is not a suit against the official personally, but rather is a suit against the official's office. See Will v. Michigan Dep't of State Police, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); Brandon v. Holt, 469 U.S. 464, 471, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985); Monell, 436 U.S. at 691 n. 55, 98 S.Ct. 2018; Ganther v. Ingle, 75 F.3d 207, 209 (5th Cir.1996). As such, it is no different than a suit against Brookshire itself. See Will, 491 U.S. at 71, 109 S.Ct. 2304 (citing Kentucky v. Graham, 473 U.S. 159, 165-66, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); Monell, 436 U.S. at 691 n. 55, 98 S.Ct. 2018); Baker, 75 F.3d at 195.
The United States Supreme Court has observed:
As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity. Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself.
Graham, 473 U.S. at 166, 105 S.Ct. 3099 (citations omitted). Hence, "[t]here is no longer a need to bring official-capacity actions against local government officials, for under Monell ... local government units can be sued directly for damages and injunctive or declaratory relief." Id. at 167 n. 14, 105 S.Ct. 3099; see Monell, 436 U.S. at 690, 98 S.Ct. 2018. Because "the Eleventh Amendment does not apply to `counties and similar municipal corporations,'" Brookshire may be subject to claims for monetary and injunctive relief under § 1983. Crane v. Texas, 759 F.2d 412, 415 (5th Cir.), cert. denied, 474 U.S. 1020, 106 S.Ct. 570, 88 L.Ed.2d 555 (1985) (citing Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 150 n. 34, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) (quoting Mt. Healthy City Sch. Dist. v. Doyle, 429 U.S. 274, 280, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977))); see Van Ooteghem v. Gray, 584 F.Supp. 897, 898 (S.D.Tex.1984), aff'd as modified, 774 F.2d 1332 (5th Cir.1985) (citing Bennett, 728 F.2d at 765 n. 1). Therefore, Casanova's action against Garcia in his official capacity is merely redundant and is of no independent legal significance.

*660 7. Claims Against Garcia in his Individual Capacity

a. Supervisory Liability under § 1983

Garcia asserts that Casanova's § 1983 claims should be dismissed because he fails to allege any facts suggesting that Garcia was personally involved in Casanova's arrest or that he caused or was the moving force behind Casanova's alleged harm. Public records, however, reflect that Garcia was the affiant on the criminal complaint filed against Casanova on July 1, 1996, stating:
THE AFFIANT IS JOE GARCIA, THE CHIEF OF POLICE FOR THE CITY OF BROOKSHIRE POLICE DEPARTMENT. THE AFFIANT DIRECTED AND ASSISTED IN AN UNDERCOVER NARCOTICS INVESTIGATION INVOLVING THE PURCHASE OF ILLEGAL DRUGS IN BROOKSHIRE, WALLER COUNTY, TEXAS. THE NARCOTICS INVESTIGATION INVOLVED UNDERCOVER POLICE OFFICERS FROM THE TEXAS DEPARTMENT OF PUBLIC SAFETY, RICHMOND POLICE DEPARTMENT, HOUSTON POLICE DEPARTMENT, HARRIS COUNTY ORGANIZED CRIME NARCOTICS TASK FORCE, AND WALLER COUNTY SHERIFF'S OFFICE.
ON FEBRUARY 21, 1996, DEP. L. BARR PURCHASED A WHITE POWDERY SUBSTANCE BELIEVED TO BE COCAINE FROM A WHITE MALE, WHO WAS IDENTIFIED BY DEP. BARR TO BE ALEX CASANOVA (CASE # SI96-014). THE AMOUNT OF COCAINE PURCHASED WAS LESS THAN ONE GRAM. THE SUBSTANCE WAS SUBMITTED TO THE TEXAS DEPARTMENT OF PUBLIC SAFETY LABORATORY IN HOUSTON, TEXAS FOR ANALYSIS. THE RESULT OF THE LABORATORY ANALYSIS INDICATED THAT THE SUBSTANCE CONTAINED COCAINE.
Casanova was not arrested until September 3, 1997, six months after he was indicted by a Waller County grand jury.
Under § 1983, supervisory officials cannot be held liable for the actions of subordinates under any theory of vicarious liability. See Monell, 436 U.S. at 691-95, 98 S.Ct. 2018; Alton v. Texas A & M Univ., 168 F.3d 196, 200 (5th Cir.1999); Southard v. Texas Bd. of Criminal Justice, 114 F.3d 539, 551 (5th Cir.1997); Thompkins v. Belt, 828 F.2d 298, 303-04 (5th Cir.1987); Thibodeaux v. Arceneaux, 768 F.2d 737, 739 (5th Cir.1985); see also Bennett, 728 F.2d at 767-70. A supervisor may be held liable, however, if he is either personally involved in the constitutional deprivation or there is a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. See Alton, 168 F.3d at 200; Thompkins, 828 F.2d at 304; see also Harvey v. Andrist, 754 F.2d 569, 572 (5th Cir.), cert. denied, 471 U.S. 1126, 105 S.Ct. 2659, 86 L.Ed.2d 276 (1985); Lozano v. Smith, 718 F.2d 756, 768 (5th Cir.1983); Vela v. White, 703 F.2d 147, 153 (5th Cir.1983). In other words, "the misconduct of the subordinate must be affirmatively linked to the action or inaction of the supervisor." Southard, 114 F.3d at 551. To prevail against a supervisory official, the plaintiff must demonstrate that the official's act, or failure to act, either caused or was the moving force behind the plaintiff's harm. See Monell, 436 U.S. at 692-94, 98 S.Ct. 2018; Smith v. Brenoettsy, 158 F.3d 908, 911 (5th Cir.1998); Vela, 703 F.2d at 153. Supervisory officials may be held liable only if they (i) affirmatively participate in acts that cause a constitutional deprivation or (ii) implement unconstitutional policies that causally result in the plaintiff's injuries. See Baker, 75 F.3d at 199 (citing Mouille v. City of Live Oak, 977 F.2d 924, 929 (5th Cir.1992), cert. denied, 508 U.S. 951, 113 S.Ct. 2443, 124 L.Ed.2d 660 (1993)); Brenoettsy, 158 F.3d at 911. "In sum, the [supervisor's] conduct must be measured against the standard of deliberate indifference." Alton, 168 F.3d at 200. *661 "For an official to act with deliberate indifference, `the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Brenoettsy, 158 F.3d at 911; see Farmer, 511 U.S. at 837, 114 S.Ct. 1970; Alton, 168 F.3d at 200. "The standard of deliberate indifference is high." Id. (citing Doe v. Dallas Indep. Sch. Dist., 153 F.3d 211, 218 (5th Cir.1998)).
In this instance, although Garcia was the affiant on a complaint initiating criminal proceedings against Casanova, it was presented to a justice of the peace, James A. Koen, ("Koen"), who issued the complaint upon a finding of probable cause. Therefore Koen's signing the complaint broke the chain of causation between Garcia's actions and Casanova's ultimate arrest, insulating him from liability in the absence of allegations of malicious intent on the part of Garcia. "It is well settled that if facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party" as long as any "malicious motive of the officer does not lead him to withhold any relevant information." Taylor, 36 F.3d at 456-57; see Hand, 838 F.2d at 1427. Casanova alleges no facts from which it could be inferred that Garcia acted with malice or deliberate indifference or had reason to believe that Barr's identification of Casanova as the suspect was faulty. Moreover, yet another intermediary, the Waller County grand jury, intervened before Casanova's arrest and, like Koen, found probable cause to believe that Casanova had committed the offense. Thus, any connection between Garcia's affidavit and Casanova's arrest is too tenuous to constitute the "moving force" behind Casanova's harm.

b. Qualified Immunity

Garcia also asserts that he it entitled to qualified immunity from Casanova's § 1983 claims. Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818-19, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); see Tamez v. City of San Marcos, 118 F.3d 1085, 1091 (5th Cir.1997), 522 U.S. 1125, 118 S.Ct. 1073, 140 L.Ed.2d 132 (1998); Hart, 127 F.3d at 441. "An official acts within his discretionary authority when he performs nonministerial acts within the boundaries of his official capacity." Tamez, 118 F.3d at 1091-92; see Cronen v. Texas Dep't of Human Servs., 977 F.2d 934, 939 (5th Cir.1992).
The qualified or `good faith' immunity doctrine was established to reconcile two competing interests. One interest is the compensation of persons whose federally protected rights have been violated. Opposing this is the fear that personal liability will inhibit public officials in the discharge of their duties. Qualified immunity has therefore been recognized to protect `all but the plainly incompetent or those who knowingly violate the law.'
Johnston v. City of Houston, 14 F.3d 1056, 1059 (5th Cir.1994) (quoting Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)).
"Whether a government official is entitled to qualified immunity `generally turns on the "objective reasonableness of the action" assessed in light of the legal rules that were "clearly established" at the time it was taken.'" Johnston, 14 F.3d at 1059 (quoting Texas Faculty Ass'n v. University of Tex. at Dallas, 946 F.2d 379, 389 (5th Cir.1991) (quoting Anderson v. Creighton, 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987))); see Siegert v. Gilley, 500 U.S. 226, 231, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991); Anderson, 483 U.S. at 638, 107 S.Ct. 3034; Mitchell v. Forsyth, 472 U.S. 511, 530, 105 S.Ct. 2806, *662 86 L.Ed.2d 411 (1985); Harlow, 457 U.S. at 818, 102 S.Ct. 2727; Petta v. Rivera, 143 F.3d 895, 899-900 (5th Cir.1998); Tamez, 118 F.3d at 1095 n. 5; Dunn v. Denk, 79 F.3d 401, 403 (5th Cir.1996). A defendant "is entitled to qualified immunity unless he violated a constitutional right that was clearly established at the time of his conduct." Blackwell, 34 F.3d at 302-03; see Harper v. Harris County, 21 F.3d 597, 600 (5th Cir.1994). In considering a claim of qualified immunity, the court must make a two-step inquiry:
First, the court must determine whether the plaintiff has alleged a violation of a clearly established constitutional right. If the plaintiff fails this step, the defendant is entitled to qualified immunity. If [he] is successful, the issue becomes the objective legal reasonableness of the defendant's conduct under the circumstances.
Baker, 75 F.3d at 198 (citations and internal quotations omitted); see Nerren v. Livingston Police Dep't, 86 F.3d 469, 473 (5th Cir.1996); Harper, 21 F.3d at 600; Rankin v. Klevenhagen, 5 F.3d 103, 105 (5th Cir.1993). A legal right is clearly established if the contours of the right are sufficiently clear that reasonable officials would understand that what they were doing violates that right. See Anderson, 483 U.S. at 640, 107 S.Ct. 3034; Johnston, 14 F.3d at 1059; Bennett, 883 F.2d at 408. In 1997, at the time of the incident in question, it was well established that a person has a constitutional right to be free from an illegal search or seizure, one lacking in probable cause. The Fourth Amendment provides:
The right of the people to be secure in their persons ... and effects, against unreasonable searches and seizures, shall not be violated and no Warrants shall issue, but upon probable cause....
U.S. Const.Amend. IV. It, likewise, was well settled that an individual has a Fourth Amendment right to be free from malicious prosecution. See Kerr, 171 F.3d at 339; Evans, 168 F.3d at 862 n. 9; Eugene, 65 F.3d at 1303, 1305.
"`If reasonable public officials could differ on the lawfulness of the defendant's actions, the defendant is entitled to qualified immunity.'" Blackwell, 34 F.3d at 303 (quoting Pfannstiel v. City of Marion, 918 F.2d 1178, 1183 (5th Cir.1990)); accord Johnston, 14 F.3d at 1059; see Malley, 475 U.S. at 341, 106 S.Ct. 1092; Cantu v. Rocha, 77 F.3d 795, 806 (5th Cir.1996). When a search or seizure is challenged:
[A] qualified immunity defense cannot succeed where it is obvious that a reasonably competent officer would find no probable cause. On the other hand, "if officers of reasonable competence could disagree on this issue, immunity should be recognized."
Babb v. Dorman, 33 F.3d 472, 477 (5th Cir.1994) (quoting Malley, 475 U.S. at 341, 106 S.Ct. 1092). The issue, therefore, is "`not probable cause in fact, but "arguable" probable cause.'" Gorra v. Hanson, 880 F.2d 95, 97 (8th Cir.1989) (quoting Floyd v. Farrell, 765 F.2d 1, 5 (1st Cir. 1985)). With regard to an officer seeking an arrest warrant, the Supreme Court has held that "[d]efendants will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue; but if officers of reasonable competence could disagree on this issue, immunity should be recognized." Malley, 475 U.S. at 341, 106 S.Ct. 1092; see Morin, 77 F.3d at 122; Taylor, 36 F.3d at 456-57; Williams v. City of Luling, 802 F.Supp. 1518, 1525 (W.D.Tex.1992). The Fifth Circuit has observed in the context of a Fourth Amendment claim alleging wrongful arrest:
In suits alleging illegal arrest, the qualified immunity determination turns on whether "`a reasonable officer could have believed [the arrest] to be lawful, in light of clearly established law and the information the ... officer [ ] possessed.' Even law enforcement officials who `reasonably but mistakenly believe *663 that probable cause is present' are entitled to immunity."
Babb, 33 F.3d at 477 (quoting Hunter v. Bryant, 502 U.S. 224, 226, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991)); see Baker, 75 F.3d at 198. "[N]o right is guaranteed by federal law that one will be free from circumstances where he will be endangered by the misinterpretation of his acts." Id.; Kellough v. Bertrand, 22 F.Supp.2d 602, 610-11 (S.D.Tex.1998). Thus, an "officer could make a constitutionally reasonable judgment based on a factual misperception." Snyder, 142 F.3d at 800. In other words, if Garcia's conduct was objectively reasonable, he may invoke qualified immunity, even if the conduct infringed upon Casanova's constitutional rights. See Gutierrez v. City of San Antonio, 139 F.3d 441, 445 (1998); Pfannstiel, 918 F.2d at 1183.
Qualified immunity is available to defendant officials in suits arising under § 1983 and is an immunity from suit, extending beyond a defense to liability to include all aspects of civil litigation, including discovery. See Heitschmidt v. City of Houston, 161 F.3d 834, 840 (5th Cir.1998); Jacquez, 801 F.2d at 791; see also Mitchell, 472 U.S. at 526, 105 S.Ct. 2806. Because it is "an affirmative defense, the defendant must both plead and establish his entitlement to immunity." Tamez, 118 F.3d at 1091; see Siegert, 500 U.S. at 231, 111 S.Ct. 1789; Harlow, 457 U.S. at 815, 102 S.Ct. 2727; Gomez v. Toledo, 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980); Cronen, 977 F.2d at 939. Once an official asserts his entitlement to qualified immunity in a properly supported motion for summary judgment, however, the plaintiff bears the burden of coming forward with sufficient summary judgment evidence to sustain a determination that the official's actions violated clearly established federal law. See Blackwell, 34 F.3d at 301; Salas v. Carpenter, 980 F.2d 299, 304, 306 (5th Cir.1992); Bennett, 883 F.2d at 408; United States v. Burzynski Cancer Research Institute, 819 F.2d 1301, 1310 (5th Cir.1987), cert. denied, 484 U.S. 1065, 108 S.Ct. 1026, 98 L.Ed.2d 990 (1988); Saldana v. Garza, 684 F.2d 1159, 1163 (5th Cir.1982), cert. denied, 460 U.S. 1012, 103 S.Ct. 1253, 75 L.Ed.2d 481 (1983). Hence, to prevail, Casanova must show that Garcia knew or reasonably should have known that the action he was taking within his sphere of official responsibility would violate Casanova's constitutional rights. See Harlow, 457 U.S. at 818, 102 S.Ct. 2727; Schultea, 47 F.3d at 1431-32.
In this instance, the appropriate inquiry is whether Garcia violated a clearly established constitutional right by swearing to the criminal complaint against Casanova and whether his conduct was objectively reasonable. The complaint reveals that Garcia received information about Casanova's alleged drug activities from Barr. There is no suggestion that Garcia was aware or suspected that Barr's information was inaccurate. Hence, there is no indication of wrongdoing on the part of Garcia. Indeed, Casanova has never fully articulated his reason for suing Garcia. When defense counsel pursued this line of inquiry at deposition, the following exchange occurred:
Q Okay. Have you ever met Chief Garcia of the Brookshire Police Department?
A. No, I have not.
Q. Then why are you suing him?
A. Because I feel I was falsely arrested for something that  I mean, and I paid dearly for it. Someone should be liable.
Q. Okay. But why Chief Garcia?
A. You have to 
Q. You need to answer. He can't answer for you.
A. Because that's what  it's on that piece of paper there. That's all I know. That's one of the entities that we're involved in this lawsuit.
Q. No. Chief Garcia is not an entity. He's a person? Do you 

*664 A. Well 
Q.  understand that?
A.  one of the people.
Q. Okay. Well, that's what I'm asking you. What did Chief Garcia do that you're suing him over?
A. Maybe negligence on his part on the police report.
Q. Not maybe. I want to know what you claim he did. The idea is not to sue somebody then guess what you're suing them for. What I'm asking you is what are you suing Chief Garcia for today?
A. For negligence.
* * * * * *
Q. Okay. If Chief Garcia says he didn't do anything, let alone anything wrong that caused you to be arrested, would you disagree with that?
A. I wouldn't agree.
Q. Okay. Well, why would you disagree?
A. Because I don't know.
Q. Okay. But then you don't have any basis to disagree, do you?
A. I guess not, but I got arrested for something that I didn't do.
* * * * * *
Q. Okay. As we sit here today, do you know of anything that Chief Garcia was supposed to have done that he didn't do that cause you to be arrested?
A. No, I do not.
In this situation, Casanova has not shown Garcia's actions to be objectively unreasonable or that he violated clearly established federal law. See Blackwell, 34 F.3d at 301. Consequently, Garcia is entitled to qualified immunity. Moreover, even in the absence of qualified immunity, liability may not be imposed under § 1983 for mere negligence. See Farmer, 511 U.S. at 828-29, 114 S.Ct. 1970; Campbell, 43 F.3d at 977; Fraire, 957 F.2d at 1276. Therefore, under the circumstances presented here, Casanova's § 1983 claims against Garcia must be rejected.

C. State Law Claims

1. Sovereign Immunity under Texas Law

Waller argues that it is immune from Casanova's claims under Texas law. In Texas, a governmental entity has sovereign immunity and cannot be held liable for the actions of its employees unless there is a constitutional or statutory provision waiving such immunity. See City of Amarillo v. Martin, 971 S.W.2d 426, 427 (Tex.1998); Dallas County Mental Health & Mental Retardation v. Bossley, 968 S.W.2d 339, 341 (Tex.), cert. denied, 525 U.S. 1017, 119 S.Ct. 541, 142 L.Ed.2d 450 (1998); Harris County v. Dillard, 883 S.W.2d 166, 168 (Tex.1994); University of Tex. Med. Branch v. York, 871 S.W.2d 175, 177 (Tex.1994); Lowe v. Texas Tech Univ., 540 S.W.2d 297, 298 (Tex. 1976). Sovereign immunity can be waived only through the use of clear and unambiguous language. See York, 871 S.W.2d at 177; Duhart v. State, 610 S.W.2d 740, 742 (Tex.1980). In the absence of a waiver, Waller is entitled to sovereign immunity with respect to Casanova's state law claims. See York, 871 S.W.2d at 177; City of El Paso v. W.E.B. Investments, 950 S.W.2d 166, 169 (Tex.App.  El Paso 1997, writ denied); Allen v. City of Midlothian, 927 S.W.2d 316, 322 (Tex.App.  Waco 1996, no writ).
The Texas Legislature enacted the Texas Tort Claims Act ("TTCA") to waive sovereign immunity in certain limited circumstances. See Bossley, 968 S.W.2d at 340, 343; Kerrville State Hosp. v. Clark, 923 S.W.2d 582, 586 (Tex.1996); York, 871 S.W.2d at 177. The TTCA provides:
A governmental unit in the state is liable for:
(1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence *665 of an employee acting within his scope of employment if:
(A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and
(B) the employee would be personally liable to the claimant according to Texas law; and
(2) personal injury and death so caused by the condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.
TEX.CIV.PRAC. & REM.CODE ANN. § 101.021. Counties, as political subdivisions of the State of Texas, fall within the parameters of the Act. See id. at § 101.001(2)(B); see also McCord v. Memorial Med. Ctr. Hosp., 750 S.W.2d 362, 363 (Tex.App.  Corpus Christi 1988, no writ). The TTCA waives immunity for three types of claims: (1) claims arising from the operation or use of motor-driven vehicles or equipment; (2) claims caused by a condition or use of tangible personal or real property; and (3) claims arising from premises defects. See Kesler v. King, 29 F.Supp.2d 356, 375 (S.D.Tex.1998); TEX.CIV.PRAC. & REM.CODE ANN. §§ 101.021, 101.022; see also Bossley, 968 S.W.2d at 342-43; Salcedo v. El Paso Hosp. Dist., 659 S.W.2d 30, 33 (Tex.1983); Vincent v. West Tex. State Univ., 895 S.W.2d 469, 472 (Tex.App.  Amarillo 1995, no writ). To hold a governmental entity liable under the TTCA for the acts of its employees: (1) the claim must arise under one of three specific areas of liability; and (2) the claim must not fall within an exception to the waiver of sovereign immunity. See Alvarado v. City of Brownsville, 865 S.W.2d 148, 155 (Tex.App.  Corpus Christi 1993), rev'd on other grounds, 897 S.W.2d 750 (Tex.1995); accord City of Hempstead v. Kmiec, 902 S.W.2d 118, 122 (Tex.App.  Houston [1st Dist.] 1995, no writ); McKinney v. City of Gainesville, 814 S.W.2d 862, 865 (Tex.App.  Fort Worth 1991, no writ); see also City of Denton v. Page, 701 S.W.2d 831, 834 (Tex. 1986); Salcedo, 659 S.W.2d at 31. "The determination of a governmental entity's negligence will be made only after a claimant has cleared these two statutory hurdles." Alvarado, 865 S.W.2d at 155.
The TTCA does not provide for liability based upon a misuse of information, even if that information is recorded in writing, as information is not tangible property. See York, 871 S.W.2d at 179; Texas Department of Human Services v. Benson, 893 S.W.2d 236, 239-40 (Tex. App.  Austin 1995, writ denied). "[I]nformation itself is an abstract concept, lacking corporeal, physical, or palpable qualities." York, 871 S.W.2d at 179. Likewise, misinterpreting or drawing the wrong conclusion from information does not involve tangible personal property under the TTCA. See Campbell, 43 F.3d at 979. There is also no cognizable cause of action for "merely negligent misidentification." Campbell, 43 F.3d at 979.
Under the TTCA, unlike in a federal § 1983 action, a governmental unit may be liable for its employee's negligence under the doctrine of respondeat superior. See DeWitt v. Harris County, 904 S.W.2d 650, 653 (Tex.1995). "Respondeat superior imposes liability on the employer that is responsible for the acts of his employee, acting in the scope of his employment, where the negligence of the employee is shown to have been the proximate cause of [the] injury." Id. at 654 (citing Marange v. Marshall, 402 S.W.2d 236, 239 (Tex.Civ. App.  Corpus Christi 1966, writ ref'd n.r.e.)). Nevertheless, as with a private employer, affirmative defenses available to its employees are also available to Waller. See id.; see also City of Columbus v. Barnstone, 921 S.W.2d 268, 272 (Tex. App.  Houston [1st Dist.] 1995, no writ). Thus, liability cannot be imposed upon a governmental entity for the negligence of an employee who has official immunity. See DeWitt, 904 S.W.2d at 651; City of Beverly Hills v. Guevara, 911 S.W.2d 901, 903 (Tex.App.  Waco 1995, no writ); Texas *666 Dep't of Pub. Safety v. Perez, 905 S.W.2d 695, 698 (Tex.App.  Houston [14th Dist.] 1995, writ denied). Furthermore, an employee may have official immunity even though he may have been negligent in the performance of his duties. See Guevara, 911 S.W.2d at 904.
The TTCA does not, however, waive immunity for intentional torts. See Taylor, 36 F.3d at 457; Riggs v. City of Pearland, 177 F.R.D. 395, 405 (S.D.Tex. 1997); Huong v. City of Port Arthur, 961 F.Supp. 1003, 1008-09 (E.D.Tex.1997); Kmiec, 902 S.W.2d at 122; City of San Antonio v. Dunn, 796 S.W.2d 258, 261 (Tex.App.  San Antonio 1990, writ denied). In fact, "the Tort Claims Act's waiver of immunity expressly excludes intentional torts such as assault and battery and intentional infliction of emotional distress." Kesler, 29 F.Supp.2d at 375 (citing TEX.CIV.PRAC. & REM.CODE ANN. § 101.057(2)); see also Kellough, 22 F.Supp.2d at 612; Hobbs v. City of Garland, No. Civ. A. 3:97-CV-3175-P, 1998 WL 485684, at *8 (N.D.Tex. Aug. 7, 1998); Dupre v. Harris County Hosp. Dist., 8 F.Supp.2d 908, 928 (S.D.Tex.1998). The statute provides:
This chapter does not apply to a claim:
(1) based on an injury or death connected with any act or omission arising out of civil disobedience, riot, insurrection, or rebellion; or
(2) arising out of assault, battery, false imprisonment, or any other intentional tort, including a tort involving disciplinary action by school authorities.
TEX.CIV.PRAC. & REM.CODE ANN. § 101.057. "This limitation provides that claims `arising out of assault, battery, false imprisonment, or any other intentional tort' are not actionable" under the TTCA. McCord, 750 S.W.2d at 363; see Riggs, 177 F.R.D. at 405; Callis v. Sellars, 953 F.Supp. 793, 801 (S.D.Tex.1996); Dunn, 796 S.W.2d at 261. "This provision shields municipalities from suits arising out of intentional torts committed by governmental employees and should be liberally construed to accomplish this objective." Gillum v. City of Kerrville, 3 F.3d 117, 123 (5th Cir.1993), cert. denied, 510 U.S. 1072, 114 S.Ct. 881, 127 L.Ed.2d 76 (1994) (citations omitted). Therefore, Waller is immune from liability for Casanova's intentional tort claims of assault, false arrest, and malicious prosecution.

2. Official Immunity

Finally, Garcia maintains that Casanova's state law claims against him are barred by the doctrine of official immunity. Unlike sovereign immunity, which protects governmental entities, official immunity protects individual officials from liability. See DeWitt, 904 S.W.2d at 652; Kassen v. Hatley, 887 S.W.2d 4, 8 (Tex. 1994). "Official immunity ... exists so government officials may remain free to exercise their duties without fear of damage suits: suits which would consume their time and energy and the threat of which might appreciably inhibit the fearless, vigorous, and effective administration of policies of government." Jackson v. Stinnett, 881 S.W.2d 498, 500 (Tex.App.  El Paso 1994, no writ); see Armendarez v. Tarrant County Hosp. Dist., 781 S.W.2d 301, 305 (Tex.App.  Fort Worth 1989, writ denied). "The purpose of official immunity is to insulate the functioning of government from the harassment of litigation, not to protect erring officials." Kassen, 887 S.W.2d at 8 (citing Westfall v. Erwin, 484 U.S. 292, 295, 108 S.Ct. 580, 98 L.Ed.2d 619 (1988)).
Under Texas law, "[g]overnment officials are entitled to immunity from suit arising from performance of their (1) discretionary duties in (2) good faith as long as they are (3) acting within the scope of their authority." Hart, 127 F.3d at 450 (citing City of Lancaster v. Chambers, 883 S.W.2d 650, 653 (Tex. 1994)); see Tamez, 118 F.3d at 1097; Cantu, 77 F.3d at 808; Kassen, 887 S.W.2d at 9. Official immunity is an affirmative defense *667 which places on the defendant the burden of establishing all its elements. See Chambers, 883 S.W.2d at 653; Montgomery v. Kennedy, 669 S.W.2d 309, 310-11 (Tex.1984).
An act is discretionary under Texas law if it requires personal deliberation, decision, and judgment. See Harris County v. Ochoa, 881 S.W.2d 884, 887 (Tex. App.  Houston [14th Dist.] 1994, writ denied); Esparza v. Diaz, 802 S.W.2d 772, 779 (Tex.App.  Houston [14th Dist.] 1990, no writ). "Discretionary functions receive protection, but ministerial duties do not." Kassen, 887 S.W.2d at 9. As the Texas Supreme Court explained in Chambers:
Ministerial acts are those `[w]here the law prescribes and defines the duties to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment ... but where the act to be done involves the exercise of discretion or judgment, it is not to be deemed merely ministerial.' ... If an action involves personal deliberation, decision and judgment, it is discretionary; actions which require obedience to orders or the performance of a duty to which the actor has no choice, are ministerial.
883 S.W.2d at 654 (citations omitted); see Tamez, 118 F.3d at 1097; Kassen, 887 S.W.2d at 9. Texas courts have long recognized that police officers are engaged in discretionary functions while performing their official duties. See, e.g., Tamez, 118 F.3d at 1097; Gallia v. Schreiber, 907 S.W.2d 864, 869 (Tex.App.  Houston [1st Dist.] 1995, no writ); Perez, 905 S.W.2d at 699-700; Boozier v. Hambrick, 846 S.W.2d 593, 597 (Tex.App.  Houston [1st Dist.] 1993, no writ); Vasquez v. Hernandez, 844 S.W.2d 802, 804-05 (Tex.App.  San Antonio 1992, writ dism'd w.o.j.); Wyse v. Department of Pub. Safety, 733 S.W.2d 224, 227 (Tex.App.  Waco 1986, writ ref'd n.r.e.); Dent v. City of Dallas, 729 S.W.2d 114, 117 (Tex.App.  Dallas 1986, writ ref'd n.r.e.), cert. denied, 485 U.S. 977, 108 S.Ct. 1272, 99 L.Ed.2d 483 (1988).
"An official acts in `good faith' if any reasonably prudent officer could have believed that the conduct was consistent with the plaintiff's rights." Cantu, 77 F.3d at 808; see Tamez, 118 F.3d at 1097; Chambers, 883 S.W.2d at 656-57; Guevara, 911 S.W.2d at 904-05; Perez, 905 S.W.2d at 699. The test of good faith is one of objective legal reasonableness without regard to whether the government official involved acted with subjective good faith. See Hart, 127 F.3d at 450; Cantu, 77 F.3d at 809; Chambers, 883 S.W.2d at 656. To controvert an official's summary judgment proof of good faith, the plaintiff must show that "no reasonable person in the defendant's position could have thought the facts were such that they justified defendant's acts." Chambers, 883 S.W.2d at 657; Guevara, 911 S.W.2d at 904. If officers of reasonable competence could disagree on the issue, immunity should be recognized. See Gallia, 907 S.W.2d at 869 (citing Chambers, 883 S.W.2d at 656-57).
Here, Casanova fails to demonstrate that Garcia engaged in any act outside the scope of his official authority which led to Casanova's arrest. In this situation, Garcia, when serving as the affiant on the criminal complaint, could reasonably rely on information provided by another peace officer, who identified Casanova as the individual who sold him cocaine. See Bennett, 883 F.2d at 407. Therefore, Garcia is entitled to official immunity on all of Casanova's state law claims.
Thus, Casanova's state law claims against Garcia and Waller are without basis.

III. Conclusion

Casanova's claims against Garcia and Waller brought under § 1983 and Texas common law are foreclosed as a matter of law. Accordingly, Garcia and Waller's Motions to Dismiss (# 33 & # 36) and Garcia's *668 Motion for Summary Judgment (# 44) are GRANTED.
IT IS SO ORDERED.